(No. 95042.—

THE DEPARTMENT OF TRANSPORTATION *ex rel.* THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. 151 INTERSTATE ROAD CORPORATION *et al.*, Appellees.

*Opinion filed February 5, 2004.—Modified on denial of rehearing April 15, 2004.*

Lisa Madigan, Attorney General, of Springfield, and Richard A. Redmond, Steffanie N. Garrett and Michele E. Sibley Gonzales, of Holland & Knight, L.L.P., Special Assistant Attorneys General, of Chicago, for appellant.

Robert J. Pugliese, Hugh C. Griffin and Hugh S. Balsam, of Lord, Bissell & Brook, L.L.P., of Chicago, for appellees.

Scott M. Day and Rachel K. Robert, of Day & Robert, P.C., and Robert G. Black, all of Naperville, for *amicus curiae* Forest Preserve District of Du Page County.

JUSTICE RARICK delivered the opinion of the court:

This condemnation action presents a question of law on which our appellate court is divided: May a condemning authority's good faith in negotiating with a property owner be challenged in an interlocutory appeal brought pursuant to section 7—104(b) of the Eminent Domain Act (735 ILCS 5/7—104(b) (West 2000))?

The Fifth District of the appellate court was the first to consider the question. It answered in the negative, holding that whether a condemning authority has negoti-

ated in good faith is not among the issues that can be raised in an interlocutory appeal under the statute. See *Southwestern Illinois Development Authority v. National City Environmental, L.L.C.*, 304 Ill. App. 3d 542 (1999), *aff'd*, 199 Ill. 2d 225 (2002). Although our court affirmed the Fifth District's judgment, we did so without addressing the question now at issue. The question was subsequently considered by the Second District of the appellate court in the case before us today. It rejected the Fifth District's view and concluded that the issue of good faith can be considered on interlocutory review pursuant to section 7—104(b). 333 Ill. App. 3d 821. The Third District of the appellate court is in agreement with the Second District's view. See *Department of Transportation ex rel. People v. Hunziker*, 342 Ill. App. 3d 588 (2003).

We granted the Illinois Department of Transportation (IDOT) leave to appeal from the Second District's judgment to resolve the conflict. 177 Ill. 2d R. 315. We also allowed the Forest Preserve District of Du Page County to file a brief as *amicus curiae* in support of IDOT. 155 Ill. 2d R. 345. For the reasons that follow, we now affirm in part, reverse in part and remand to the circuit court.

The pertinent facts are these. In May of 2001, IDOT filed a petition in the circuit court of Du Page County to acquire, through eminent domain, certain property owned by 151 Interstate Road Corporation (Interstate Road). The action was brought pursuant to the Eminent Domain Act (735 ILCS 5/7—101 *et seq.* (West 2000)). The subject property was located in the City of Addison and was needed by IDOT for a project to improve and repair a public highway known as U.S. Route 20. Five parcels were involved. In two of the parcels, IDOT sought to obtain a fee simple interest. In the remaining three, IDOT requested only a temporary easement.

IDOT filed a similar eminent domain action against

Jane A. Green in her capacity as trustee of two revocable trusts which owned additional parcels of land near Interstate Road's property.[1] IDOT sought to acquire the trusts' property for the same highway project involved in the Interstate Road matter. Jane Green's family controls Interstate Road, and the two proceedings were consolidated by the circuit court on IDOT's motion. For purposes of this opinion, Interstate Road and Green will be referred to collectively as "the Owners."

The Owners filed a traverse and motion to dismiss in each proceeding asking the circuit court to dismiss IDOT's petitions and to award them their costs, expenses and reasonable attorney fees. As grounds for their motions, the Owners alleged that IDOT's petitions were fatally defective because they failed to plead compliance with section 7—102.1 of the Eminent Domain Act (735 ILCS 5/7—102.1 (West 2000)), which requires the state and its agencies to take certain action before initiating eminent domain proceedings in the circuit court. The Owners further alleged that IDOT's petitions should be dismissed because IDOT had not complied with the substantive provisions of section 7—102.1 and had not made a *bona fide* attempt to reach a negotiated agreement with them with respect to the compensation and damages to be paid for the subject property.

A two-day hearing on the foregoing motions was held in July of 2001. At the conclusion of that hearing, the circuit court denied the Owners' motions to dismiss and scheduled a hearing on a motion by IDOT for immediate vesting of title. See 735 ILCS 5/7—103 (West 2000). After hearing evidence and the arguments of counsel regarding that motion, the court made a determination pursuant to section 7—104(b) of the Eminent Domain Act (735 ILCS 5/7—104(b) (West 2000)) that IDOT had authority to

[1] During the pendency of these proceedings, Edward H. Green, Jr., succeeded Jane Green as trustee of one of the trusts.

exercise the right of eminent domain, that the property sought to be taken is subject to the exercise of such right and that such right was not being improperly exercised in this proceeding. The court's order, filed in August of 2001, then granted IDOT's motion for immediate vesting of title and made a preliminary finding regarding the amount constituting just compensation.

The Owners were dissatisfied with the circuit court's ruling and filed an immediate appeal under Supreme Court Rule 307(a)(7), which authorizes interlocutory appeals as of right from orders "determining issues raised in proceedings to exercise the right of eminent domain under section 7—104 of the Code of Civil Procedure [735 ILCS 5/7—104]." 188 Ill. 2d R. 307(a)(7). As grounds for their appeal, the Owners argued that the circuit court erred in determining that IDOT's right of eminent domain was not being improperly exercised in this case. According to the Owners, IDOT exercised its right of eminent domain improperly because it failed to make a good-faith attempt to negotiate with them before filing suit and did not comply with the prelitigation notice requirements set forth in section 7—102.1(d) of the Eminent Domain Act (735 ILCS 5/7—102.1(d) (West 2000)). As an alternative basis for challenging the circuit court's order, the Owners argued that IDOT's petitions were defective because they should have alleged that IDOT had complied with section 7—102.1(d)'s notice requirements, but did not.

The appellate court rejected the Owners' challenge to the adequacy of IDOT's petitions. It held that neither the terms of the Eminent Domain Act nor the applicable case law requires a condemnor to plead compliance with section 7—102.1(d)'s notice requirements. It further held that the Owners had suffered no prejudice as a result of the alleged defects in the pleadings and that to allow them to challenge the sufficiency of the petitions would

violate "the spirit of the waiver rule." 333 Ill. App. 3d at 839.

Although the appellate court did not believe IDOT's petitions should have been dismissed on the pleadings, it found the Owners' substantive claims to be meritorious. Specifically, it held that the circuit court's determination that IDOT had negotiated in good faith before filing suit was contrary to the manifest weight of the evidence. It also held that IDOT had failed to properly comply with section 7—102.1(d)'s prelitigation notice requirements. Accordingly, it reversed the circuit court's order denying the Owners' traverse and motion to dismiss. It also remanded with directions to vacate the subsequent orders fixing preliminary just compensation and vesting title in IDOT and to address the Owners' claim for an award of their attorney fees and costs.

IDOT petitioned for rehearing. The appellate court denied that petition in a lengthy supplemental opinion, which reaffirmed the court's construction and application of the relevant statutory provisions. This appeal by IDOT followed.

As grounds for its appeal, IDOT contends that the issue of whether it had negotiated with the Owners in good faith was a matter that the Owners should not have been permitted to raise in an interlocutory appeal. Whether a condemning authority's good faith in negotiating with a property owner may be challenged in an interlocutory appeal is a question over which our appellate court is divided. The appellate court in the case before us held that a condemning authority's good faith may be challenged in an interlocutory appeal. Its view is shared by the Third District. See *Department of Transportation ex rel. People v. Hunziker*, 342 Ill. App. 3d 588 (2003). The Fifth District has taken a contrary view. See *Southwestern Illinois Development Authority v. National City Environmental, L.L.C.*, 304 Ill. App. 3d 542 (1999),

*aff'd*, 199 Ill. 2d 225 (2002). Because this question is jurisdictional in nature, we shall consider it first.

Article VI, section 6, of the 1970 Illinois Constitution (Ill. Const. 1970, art. VI, § 6) provides that final judgments may be appealed as a matter of right from the circuit court to the appellate court. There is no corresponding constitutional right to appeal from interlocutory orders of the circuit court. Rather, article VI, section 6, vests this court with the authority to provide for such appeals, by rule, as it sees fit. Except as specifically provided by our rules, the appellate court is without jurisdiction to review judgments, orders or decrees that are not final. *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 210 (1994).

There is no dispute that the appeal in this case does not involve a final judgment. It is being taken from an interlocutory order. The supreme court rule on which it is predicated is Rule 307(a)(7), which authorizes interlocutory appeals as of right from orders "determining issues raised in proceedings to exercise the right of eminent domain under section 7—104 of the Code of Civil Procedure [735 ILCS 5/7—104]." 188 Ill. 2d R. 307(a)(7).

Section 7—104 of the Eminent Domain Act sets forth certain of the procedures to be followed in "quick take" condemnation proceedings. "Quick take" proceedings provide a means to prevent delays to public projects that could result pending the final determination of just compensation, while at the same time protecting the rights of the landowner. Under the "quick take" provisions of the Eminent Domain Act, a condemnor files a motion for title and/or possession and the court enters a preliminary finding concerning the amount of just compensation. Title or the right to possession then vests with condemnor by order of the court upon payment of this preliminary amount. Upon a final determination of just compensation by a jury, any excess payment is

returned by the landowner. Any shortfall is satisfied by the condemnor. *Forest Preserve District v. West Suburban Bank*, 161 Ill. 2d 448, 454 (1994).

Before the court may enter a preliminary finding concerning the amount of just compensation in a "quick take" proceeding, section 7—104(b) of the Eminent Domain Act requires the court to first hear and determine: (1) that the plaintiff has authority to exercise the right of eminent domain, (2) that the property sought to be taken is subject to the exercise of such right, and (3) that such right is not being improperly exercised in the particular proceeding. 735 ILCS 5/7—104(b) (West 2000). Section 7—104(b) provides that the court's order on these matters is appealable. Because section 7—104(b)'s provisions are expressly incorporated into our Rule 307(a)(7), the court's order is immediately appealable to the appellate court even though it is interlocutory in nature.[2]

Interlocutory appeals under Rule 307(a)(7) are limited to the three issues delineated in section 7—104(b). See *Southwestern Illinois Development Authority v. Vollman*, 235 Ill. App. 3d 32, 36-37 (1992). All other issues must await appeal until the conclusion of the eminent domain proceedings. See *Vollman*, 235 Ill. App. 3d at 37-38. Whether a particular aspect of an eminent domain proceeding can be challenged on interlocutory review therefore depends on whether it falls within one of the three categories of issues set forth in section 7—104(b).

The particular matter challenged by the Owners in this appeal is whether IDOT engaged in good-faith negotiations prior to commencing condemnation proceed-

---

[2]Were section 7—104(b)'s provisions not incorporated into Rule 307(a)(7), they would run afoul of separation of powers principles. See *In re Curtis B.*, 203 Ill. 2d 53, 60 (2002) (attempts by the legislature to make nonfinal judgments appealable violate article VI, section 6, of our constitution), quoting *Almgren*, 162 Ill. 2d at 213.

ings. The Owners contend that the circuit court's ruling on that question is subject to interlocutory review under section 7—104(b) because IDOT's good faith, or lack thereof, bears on the third of the three issues addressed by that statute, namely, whether the right of eminent domain is "being improperly exercised in the particular proceeding." 735 ILCS 5/7—104(b) (West 2000).

The Eminent Domain Act does not specifically require a condemnor to undertake good-faith negotiations with a landowner before filing a condemnation action. Our appellate court has inferred from provisions of the Act, however, that a good-faith attempt by the condemnor to reach an agreement regarding the amount of compensation to be paid is a condition precedent to the exercise of the power of condemnation. See *Illinois State Toll Highway Authority v. DiBenedetto*, 275 Ill. App. 3d 400, 409 (1995); *Department of Transportation ex rel. People v. Brownfield*, 221 Ill. App. 3d 565, 567 (1991); *Department of Transportation v. Walker*, 80 Ill. App. 3d 1039, 1040 (1980). The appellate court in this case viewed that condition precedent as encompassing an obligation by the condemning authority to undertake good-faith negotiations with the landowner before proceeding to court. 333 Ill. App. 3d at 834, 841. That aspect of the appellate court's analysis has not been challenged, and we believe that it is sound. We therefore agree that the Eminent Domain Act requires the condemnor to negotiate with the landowner in good faith over the amount of compensation to be paid before it initiates proceedings to take the landowner's property through eminent domain.

Because good-faith negotiations with the landowner are a condition precedent to condemnation proceedings under the Eminent Domain Act, the question of whether a condemnor has negotiated in good faith bears directly on whether the condemnor was exercising its right of

eminent domain improperly. Absent good-faith negotiations regarding the amount of compensation a landowner should receive, any attempt to exercise the right to eminent domain would not comply with the Eminent Domain Act and would be fatally defective. We therefore agree within the appellate court in this case that the question of IDOT's good faith fell within the provisions of section 7—104(b) of the Act and could be challenged by the Owners on interlocutory review pursuant to Supreme Court Rule 307(a)(7).

As we noted at the outset of this opinion, the Fifth District adopted a contrary interpretation of the law in *Southwestern Illinois Development Authority v. National City Environmental, L.L.C.*, 304 Ill. App. 3d 542 (1999), *aff'd*, 199 Ill. 2d 225 (2002). A review of that decision discloses that it did not address the foregoing matters. In fact, it offered no analysis in support of its position. It merely made a general reference to *Southwestern Illinois Development Authority v. Vollman*, 235 Ill. App. 3d 32 (1992). *Vollman*, however, is distinguishable. The good faith of the condemnor was not at issue. The only challenge in *Vollman* was to the constitutionality of certain provisions of the Eminent Domain Act, a matter plainly outside the ambit of section 7—104(b). We therefore find the Fifth District's approach unpersuasive.

Although our court affirmed the appellate court's judgment in *Southwestern Illinois Development Authority v. National City Environmental, L.L.C.*, we had no occasion to consider whether a condemnor's good faith could be raised in an interlocutory appeal. Disposition of the appeal turned on the separate and unrelated question of "whether eminent domain powers authorized by the State of Illinois were improperly exercised in the taking of private property from one private entity for the benefit and use of another private entity." *Southwestern Illinois Development Authority*, 199 Ill. 2d at 235. As a result,

there is no inconsistency between our holding today and our resolution of that case.

Our conclusion that a condemnor's good faith in negotiating compensation is a matter that can be raised in an interlocutory appeal under Supreme Court Rule 307(a)(7) fully resolves the conflict which gave rise to our decision to allow an appeal from the appellate court's judgment in this case. It does not fully resolve IDOT's complaints about the appellate court's decision to reverse the circuit court's order denying the Owners' traverse and motion to dismiss and remanding with directions to vacate the orders which fixed preliminary just compensation and vested title in IDOT.

In addition to raising its jurisdictional challenge, IDOT also contends that the appellate court erred in holding that its prelitigation notice was deficient. It further argues that the appellate court was wrong to set aside the circuit court's determination that IDOT had acted in good faith throughout the negotiations leading up to the initiation of condemnation proceedings. Finally, it asserts that the appellate court misapplied waiver rules when considering and denying its petition for rehearing.

We turn first to the question of notice. Section 7—102.1(d) of the Eminent Domain Act (735 ILCS 5/7—102.1(d) (West 2000)) requires state agencies such as IDOT to send a letter to the property owner by certified mail, return receipt requested, at least 60 days before filing a petition in court to initiate condemnation proceedings stating the amount of compensation for the taking of the property and the basis on which the amount of compensation was computed. The letter must also state the agency's intention to continue to seek a negotiated agreement with the property owner and advise the owner that in the absence of a negotiated agreement, the agency intends to initiate a court proceeding under the Act. Under the terms of the statute, these notice provisions are mandatory.

In the case before us, IDOT sent certified letters to the respective owners of the two sets of parcels it wished to acquire. The first, dated December 29, 2000, went to the trustee of the revocable trusts that owned one of the sets of parcels. The second, dated January 9, 2001, went to Interstate Road, which owned the second set of parcels. There is no dispute that the letters conformed to the substantive provisions of the statute. There is likewise no dispute that each letter was sent more than 60 days before IDOT initiated condemnation proceedings in court on May 21, 2001.

The problem regarding notice, according to the Owners, is that after sending its original letters, IDOT revised its offer regarding the property held by Interstate Road. By letter dated March 26, 2001, IDOT advised the owners that it was amending its offer by reducing the amount of land in which it sought to acquire a fee simple interest and lowering the amount of compensation for the property by $7,000. The $7,000 reduction was not based solely on the smaller amount of acreage involved. It also reflected a decrease of approximately 4.45% in the rate IDOT was willing to pay per acre.[3]

The Owners contend that the reduction in the amount of land to be taken and the price to be paid

---

[3]The circuit court mistakenly believed that IDOT had merely made a *pro rata* reduction in its offer based on the reduced acreage it sought. The court claimed there was nothing in the record to show that IDOT had altered the price it was willing to pay per acre. Our examination of the evidence shows this to be incorrect. As we have discussed, IDOT sought to acquire interests in five parcels owned by Interstate Road. It wanted a fee simple interest in two of the parcels, identified as 4A and 4B, and temporary easements in the other three, identified as TE1, TE2, and TE3. The reduction concerned only parcels 4A and 4B.

Parcel 4A contained .026 acres. Parcel 4B contained .101 acres. The total area of 4A and 4B was .127 acres. The amount IDOT originally offered for that acreage was $55,000. That is equivalent to $433,070.87 per acre.

transformed this into an entirely new offer. In their view, section 7—102.1(d) therefore obligated IDOT to wait an additional 60 days before initiating condemnation proceedings. That was not done. As noted earlier in this disposition, eminent domain proceedings were initiated on May 21. The additional 60-day period did not expire until four days later.

The appellate court correctly observed that the Owners' objections to IDOT's notice were relevant only to the eminent domain proceedings involving the property owned by Interstate Road. 333 Ill. App. 3d at 838. The March 26 offer did not affect the property held by the revocable trusts, and IDOT fully complied with the time requirements imposed by section 7—102.1(d) before it instituted court proceedings with respect to the trusts' property.

With respect to Interstate Road's property, the appellate court was persuaded by the Owners' argument. Especially significant in the appellate court's view was that IDOT had decided to reduce the compensation it was willing to pay per acre after submitting its initial offer. The court stated that it might have reached a different conclusion had IDOT merely reduced the amount of land it sought to acquire. Such a development could have worked to the Owners' benefit. Lowering the compensa-

---

The revised offer also sought .026 acres in parcel 4A, but requested only .090 acres of parcel B. The total area sought in these two parcels was thus reduced to .116 acres. If IDOT were merely diminishing the area it was requesting and still adhering to the same rate of payment it originally offered ($433,070.87 per acre) as the circuit court believed, it would have offered $50,236.22 for the reduced area ($433,070.87/acre x .116 acres). The record shows, however, that the amount it offered was only $48,000. An offer of $48,000 for .116 acres is equivalent to only $413,793.10 per acre. The per acre price offered by IDOT thus declined by $19,277.77 ($433,070.87 minus $413,793.10), or 4.45% ($19,277.77 divided by $433,070.87), from IDOT's original offer.

tion rate did not. The appellate court believed that decreases in compensation or increases in the area to be acquired work to the disadvantage of property owners, and that when subsequent offers are prejudicial to property owners, a new 60-day period is warranted under the statute. 333 Ill. App. 3d at 838, 845.

In ruling as it did on the notice issue, the appellate court was required to break new ground. There was no precedent directly on point to guide it. The court looked to the language of the statutory notice provision, adhering to the maxim that eminent domain statutes are strictly construed to protect the rights of property owners. See *Forest Preserve District v. Estes*, 222 Ill. App. 3d 167, 175 (1991). In its supplemental opinion on denial of rehearing, the court also considered the effects its construction of the law would have on the conduct of condemnation proceedings.

The appellate court's analysis is not binding on our court. The construction of a statute is a question of law and is reviewed *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). Having said that, we believe that the conclusion reached by the appellate court here was a sound one. The provisions of section 7—102.1 of the Eminent Domain Act make clear that the statute was designed to facilitate a negotiated resolution of eminent domain proceedings whenever possible. Meaningful negotiation will only occur if property owners believe they will be no worse off at the end of the process than they were at the beginning. If the state is permitted to do what IDOT did here, namely, to make an offer at a certain price, but then reduce the rate it is willing to pay and proceed to court before an additional 60-day period has expired, property owners will have no such assurance. The prospect of diminishing payments will intimidate some property owners, making them feel pressured to accept the state's initial proposal and forgo further

discussion for fear that they might end up receiving less and less the closer the state comes to the time when it can initiate court proceedings against them. It will alienate others, causing them to reject the state's offer at the outset and elect to take their chances in court. In either case, the likelihood of meaningful bargaining will be substantially impaired. That outcome is directly contrary to the result the General Assembly hoped to achieve when it enacted section 7—102.1(d).

The construction placed on the statute by the appellate court helps to implement rather than frustrate the statute's purposes. Under the appellate court's approach, the state remains free to alter the terms of its offers if circumstances disclosed during the negotiation process so warrant. Should the state decide to make its offer less advantageous to the property owner, however, the statute's 60-day clock will be reset. Because judicial proceedings cannot be initiated until the new period expires, the state cannot use reductions or the threat of reductions to pressure landowners into accepting its terms. Freed from that possibility, landowners are far more likely to engage in meaningful discussions with the state.

The state resists application of these principles in the present case on the grounds that its revised offer may not actually have been less advantageous to Interstate Road. This contention is untenable. As we have noted, IDOT's revised offer dropped the price per acre it was willing to pay Interstate Road for its property by $19,277.77. The state has not cited to anything in the record that would justify such a reduction. It merely posits that the lower rate "may be explicable due to appraisal reasons." There are two problems with that rationale. First, it involves nothing more than speculation by the state's appellate counsel. If such "appraisal reasons" actually existed, they are not evident in any of the materials before us. Second, even if the price reduction was based on accepted appraisal

principles, that is of no consequence. For purposes of determining whether a revised offer works to a property owner's disadvantage, what matters is the effect the offer would have on the owner, not the explanation given by the state. Reasons do not change results. No matter how compelling the state's justification for changing its position may be, the fact remains that taking more property than originally sought or offering a lower price per acre than originally offered will still leave the property owner relatively worse off.

In light of this conclusion, we believe that the appellate court was correct in holding that IDOT's March 26 offer triggered an obligation by the department to provide Interstate Road with a new notice under section 7—102.1(d) and that Interstate Road should have been given an additional 60 days to consider the new offer. Because that was not done, the circuit court erred in concluding that the right of eminent domain was not being improperly exercised in this particular case. The Owners' motion to dismiss the condemnation proceedings initiated by IDOT on May 21 with respect to Interstate Road's property should have been granted.[4]

We next consider the question of IDOT's good faith during the negotiations leading up to its initiation of

---

[4]Because the change in the state's offer pertained to the two properties in which it sought to acquire a fee simple and did not affect the amount it was willing to pay to acquire temporary easements in the other three parcels, the state argues, in the alternative, that we should leave undisturbed that portion of the condemnation proceedings related to the easements. This we decline to do. All five parcels are integrally related. Their valuations are interrelated. Their utility is intertwined. Unless the state succeeds in securing all of the parcels, its ability to utilize any of the parcels is in doubt. That is why the state bundled them together in this action. Accordingly, we see no justification for severing the proceedings against Interstate Road's property. All severance would accomplish at this point is to burden taxpayers with the cost of easements that IDOT cannot yet use.

condemnation proceedings. IDOT argues that it acted properly throughout the negotiation process and that the appellate court was wrong to reject, as against the manifest weight of the evidence, the circuit court's determination that IDOT had acted in good faith. The appellate court's original and supplemental opinions devote substantial attention to this question. We note, however, that with respect to the proceedings involving Interstate Road's property, that discussion was unnecessary. Because the proceedings involving the property owned by Interstate Road were fatally flawed by the lack of proper notice under section 7—102.1(d), IDOT's complaint was subject to dismissal in any case. The appellate court's conclusion that IDOT had not acted in good faith added nothing to the disposition. The result was unchanged. Whether or not IDOT had negotiated in good faith, the complaint could not stand.

The only aspect of this litigation where good faith remained relevant and should have been considered by the appellate court was with respect to the proceedings involving the trusts' property. Our discussion of the question shall therefore be limited to those proceedings.

Whether a party has acted in good faith is generally a question of fact. As a result, a trial court's finding of good faith, or lack thereof, should not be reversed unless it is against the manifest weight of the evidence. See *In re Marriage of Barnard*, 283 Ill. App. 3d 366, 370 (1996). A trial court's finding is not against the manifest weight of the evidence unless an opposite conclusion is clearly evident. See *Dynamic Recycling Services, Inc. v. Shred Pax Corp.*, 210 Ill. App. 3d 602, 613 (1991). It will not suffice to show that the record will support a contrary decision; rather, if the record contains any evidence to support the trial court's judgment, the judgment should be affirmed. See *McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 949 (1991).

When the foregoing standards are applied to IDOT's actions regarding the trusts' property, it is difficult to conclude that the circuit court's judgment was against the manifest weight of the evidence. The amount of real estate involved was extremely limited. IDOT sought to acquire a fee simple interest in only 0.007 of an acre, which is equivalent to approximately 305 square feet. The only other interest it wanted in the trusts' property was a temporary easement in 0.006 of an acre for grading. Based on an appraisal it commissioned on this property and the property owned by Interstate Road, IDOT offered the Owners of this property the sum of $8,000.

IDOT sent a certified letter to the Owners of the trusts' property conveying its offer. As we observed earlier in this opinion, the letter complied with the requirements of section 7—102.1(d) of the Eminent Domain Act. The letter was dated December 29, 2000, and included a statement of IDOT's intent to seek a negotiated agreement to avoid litigation. There was communication between the Owners of the trusts' property and IDOT during the ensuing months, and IDOT deferred proceeding to court even after the 60-day notice period expired at the end of February. When IDOT eventually received a counteroffer from the Owners, the amount it requested for the interests held by the trusts was $11,305, a difference of $3,305 over IDOT's original offer.

In arguing that IDOT did not exercise good faith, the Owners focus on the valuation it placed on the property. We note, however, that the valuation was based on a written appraisal from a certified appraiser with 15 years of experience. Although the value placed on the property by the appraiser was substantially lower that the value given by a different appraiser subsequently retained by the Owners, it was based on accepted methodology. Nothing in the record suggests that the appraiser deviated from professional standards. When the testimony from

the appraisers is compared, it is evident that the difference in their appraisals resulted from differences in professional judgment regarding how relevant factors should be applied.

The Owners tout the superior expertise of their appraiser and disparage the credentials of the appraiser retained by IDOT. They point to certain weaknesses in the IDOT appraiser's analysis. They also emphasize that the appraiser hired by IDOT did substantial business with the department and arguably had an incentive to be conservative in his valuations. Such factors, however, were for the trial court to weigh when determining an appropriate amount to award the Owners when it entered its order fixing preliminary compensation. They did not render IDOT's appraisal inherently unreliable as a matter of law.

The trial court heard testimony from the appraisers and considered the relevant documentary evidence. It concluded that the valuation by the IDOT appraiser was, in fact, too low. Significantly, however, it also concluded that the amount demanded by the Owners for the trust property was too high. The amount it fixed as preliminary just compensation for that property was $9,940, slightly higher than the midpoint between the parties' respective positions.

Considering all of the foregoing circumstances, we find no basis for the appellate court's characterization of IDOT's appraisal as "patently inadequate" and "completely deficient." Nor do we believe that IDOT's reliance on the appraisal demonstrated a lack of good faith. Accordingly, the appellate court should not have reversed that portion of the circuit court's order denying the Owners' motion to dismiss the eminent domain proceedings against the property held by the trust.

In reaching this result, we note that the Owners are not without recourse. We are still at an early stage of the

condemnation process. If the Owners believe strongly in the validity of their own appraisal and consider the court's preliminary award to be inadequate, the Eminent Domain Act affords them the opportunity to seek higher compensation. The amount of the preliminary award cannot be used as evidence in further proceedings to ascertain finally the just compensation to be paid (735 ILCS 5/7—104(d) (West 2000)), and the Owners will be free to challenge the qualifications, procedures and conclusions of whatever valuation experts IDOT elects to use to support its position.

As a final matter, IDOT argues that the appellate court misapplied waiver rules when considering and denying its petition for rehearing. After reviewing the proceedings in the appellate court and in view of our resolution of this appeal, we do not believe that the manner in which waiver principles were applied by the appellate court resulted in any prejudice to IDOT. Further discussion of the matter would therefore serve no purpose.

For the foregoing reasons, the appellate court's judgment is affirmed in part and reversed in part. We affirm that portion of the appellate court's judgment which reversed the circuit court's order denying the Owners' motion to dismiss IDOT's complaint involving the property owned by Interstate Road. We reverse that portion of the appellate court's judgment which reversed the order of the circuit court denying the Owners' motion to dismiss IDOT's complaint involving the property held by the trusts. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment affirmed*
*in part and reversed in part;*
*cause remanded.*