SECOND DIVISION
November 6, 2007

No. 1-06-1896

| | | |
|---|---|---|
| THE CITY OF CHICAGO, a Municipal Corporation, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos.  03 L 50869 |
| | ) | 03 L 51269 |
| | ) | 04 L 50332 |
| GIUSEPPE ZAPPANI, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Rita M. Novak, |
| | ) | Judge Presiding. |

MODIFIED UPON DENIAL OF REHEARING

JUSTICE SOUTH delivered the opinion of the court:

Defendant, Giuseppe Zappani, appeals from an order of the circuit court of Cook County that denied his traverse and motion to dismiss and entered judgment orders setting $625,439 as just compensation for three parcels of land sought by plaintiff, City of Chicago (the City), in this consolidated condemnation cause of action.

The following facts are undisputed: Defendant was the owner of record of three parcels of land that were located on the west side of Chicago and part of the Central West Redevelopment Area (the CWRA).  The City created the CWRA in 1969, under the Urban Renewal Consolidation Act of 1961 (315 ILCS 30/1 *et seq.* (West 2004)) after it identified an area west of downtown as a slum and blighted area.  The City amended the redevelopment plan several times, and on April 15, 1995, the City approved amendment No. 10, which authorized it to acquire 167

properties, including 2342-2344, 2348, and 2350 West Monroe.

On April 22, 2003, the City mailed a certified form letter to defendant at an address in Bloomington, Illinois, informing him that the City Council had authorized the acquisition of his property at 2350 West Monroe and that it was prepared to pay him $110,000 for the real estate. The return receipt was signed by "Avaia Zappani" on May 23, 2003. The offer was contingent upon a satisfactory determination by the City, in its sole discretion, that there were no adverse environmental conditions upon the property that would negatively impact its market value. The offer also required that taxes for the year 2002 and 2003 be prorated on the basis of 110% of the latest tax bill. According to the letter, the offer would remain open for 10 days from the date of the letter, and if the City did not hear from him within that period, it would conclude he was not interested in a voluntary sale, and the offer would be considered rejected. In such an event, the City may commence legal proceedings to acquire the property under the Eminent Domain Act (735 ILCS 5/7-101 *et seq*. (West 2004)). Defendant never responded to the letter, and the City filed a condemnation action seeking the property at 2350 West Monroe on July 15, 2003 (City of Chicago v. Zappani, No. 03 L 50869 (Cir. Ct. Cook Co.)).

On June 18, 2003, the City mailed a second certified form letter to defendant, which stated the city council had authorized the acquisition of his property at 2342-2344 West Monroe and was prepared to pay $140,000. The return receipt was signed by "Angela Zappani" on June 20, 2003. Defendant never responded to the letter, and the City filed a condemnation action seeking to acquire that property on October 17, 2003 (City of Chicago v. Zappani, No. 03 L 51269 (Cir. Ct. Cook Co.)). On February 11, 2004, the City mailed a third certified letter to defendant

informing him that the City Council had authorized the acquisition of his property at 2348 West Monroe and was prepared to pay him $68,000. The return receipt was signed by "A Zappani" on February 23, 2004. As with the previous letters, defendant never responded, and the City filed a condemnation action seeking the property on March 25, 2004 (City of Chicago v. Zappani, No.04 L 50332 (Cir. Ct. Cook Co.)).

All three letters provided defendant with the name and telephone number of a person to contact if he wanted to set up an appointment or discuss the sale of the property. Attached to each letter was a "summary statement of the basis for just compensation," which provided the appraised fair market value and recommended acquisition price referenced in the body of the letters. The summary statements provided, in pertinent part:

"1. The amount of the offer is the amount believed by the City of Chicago to be just compensation for the subject property and is not less than its approved appraisal of the market price which a willing buyer would pay in cash and a willing seller would accept when the buyer is not compelled to buy and the seller is not compelled to sell.

2. The City of Chicago's determination of just compensation is based on its inspection of the subject property and its consideration of two appraisals of the property made independently by competent professional appraisers."

The three cases initially proceeded separately with the circuit court entering an order on

July 13, 2004, requiring the parties to exchange appraisal reports by September 13, 2004, on the property located at 2342-2344 and 2348 West Monroe. On April 20, 2005, the trial court entered an order that allowed defendant until June 6, 2005, to revise the appraisal on 2350 West Monroe to reflect the correct parcel size and date of the filing of the condemnation suit.

On December 20, 2005, defendant filed a traverse and motion to dismiss directed at all three cases on the grounds that the City had failed to make a *bona fide* offer of settlement to purchase the respective properties as required under the Eminent Domain Act before filing the lawsuits. Defendant claimed that a single letter from the City with no follow-up was insufficient for purposes of the Act. Defendant also disagreed with the determination that the section of the city at issue was currently a slum and blighted area. Defendant pointed out that it had been 37 years since the formation of the CWRA, more than eight years since the City Council had approved amendment No.10, which had authorized the acquisition of his lots, and during the period the area had improved and the property values had substantially increased. Finally, defendant challenged the constitutionality of section 7-121 of the Eminent Domain Act (735 ILCS 5/7-121 (West 2004)), as it is applied here, because it allowed the City to value his property as of the date the complaints were filed rather than the date of the taking.

On January 18, 2006, the trial court consolidated all three cases and directed that if the valuation date was determined to be as of the date of the taking, the cases would remain consolidated, but if the valuation date was determined to be as of the date of the filing of each complaint, the cases would remain independent in order for separate trials to be held.

On May 3, 2006, the trial court heard arguments on the traverse and motion to dismiss.

The City acknowledged it had to make a *bona fide* offer before filing a condemnation suit but denied it had any obligation to attach the appraisal report. The City asserted that it met the requirements of the Eminent Domain Act by sending out certified offer letters to the appropriate address and waiting between 30 to 108 days after the letters had been signed for before filing suit.

Defendant responded that it was unreasonable to leave the offers open for only 10 days from the date of the letters because, as in his case, the letters would likely be received after the expiration of the offer and there would be no incentive for the landowner to even respond.

The trial court rejected defendant's claim that the City had failed to engage in good-faith negotiations before filing suit but acknowledged it was a close issue. The trial court noted that defendant did not respond to any of the letters, and it could not find "any authority [which] indicates that the city must do more, like follow-up phone calls or follow-up letters, once an owner has received a letter and has not responded in any way. Perhaps the law will develop \*\*\* but as we stand \*\*\* today \*\*\* the City was not required to do more." In denying defendant's traverse and motion to dismiss, the trial court also found there was no evidence to support the claim that the area was no longer blighted or that applying Illinois law to the valuation of the property would be a violation of the federal constitution.

On May 23, 2006, the trial court held a case management conference to determine whether there remained a question of fact for trial or whether judgment could be entered as a matter of law. At the conference, the City agreed to pay defendant the amount determined by updated appraisals, which valued the property at the time each condemnation suit had been filed. Specifically, the City's updated appraisal for 2350 West Monroe amounted to $50 a square foot,

which was consistent with defendant's appraisal and totaled $180,000. As to 2348 West Monroe, the City's updated appraisal for that parcel was $60 a square foot, or $135,000, while defendant's appraisal came in at $62 a square foot, or $140,000, which the City agreed to pay. Finally, as to 2342-44 West Monroe, the City's updated appraisal was $50 a square foot, or $290,000, while defendant's appraisal was $53 a square foot. The City again agreed to pay defendant's appraised value, which amounted to $305,439.

On June 5, 2006, the trial court denied defendant's motion for attorney fees and appraisal costs, as well as his request for an extension of discovery for purposes of submitting current property appraisals. The trial court concluded there were no factual issues for trial and entered three separate orders setting as just compensation $180,000 for 2350 West Monroe, $305,439 for 2342-44 West Monroe, and $140,000 for 2348 West Monroe.

On appeal, defendant raises the following two issues: (1) whether the trial court erred in denying his traverse and motion to dismiss because the City failed to negotiate in good faith before it filed the condemnation actions; and (2) whether section 7-121 of the Eminent Domain Act is unconstitutional as applied here because it allowed the taking of his property for public use without just compensation.

We first consider defendant's claim that the City failed to negotiate in good faith for the three parcels of land before filing suit against him. Defendant argues that a single letter with an extremely low offer to purchase, along with no attempt to make personal contact by the condemning authority, does not satisfy the good-faith requirements. He relies, in part, on the fact that the City ultimately agreed to pay him substantially more than what was offered in each letter,

1-06-1896

and only a short period of time had passed between the time the letters were issued and the filing of the lawsuit.

In response, the City asserts it negotiated in good faith because it offered defendant in each letter the fair market value for the parcels, but he never responded. The City states that the difference between what it initially offered defendant and the subsequent increased appraised value was attributable to the different dates used to value each parcel, and the record contains no basis to question the accuracy of the original appraisals.

Upon review of the denial of a traverse and motion to dismiss, we consider whether the trial court's order was against the manifest weight of the evidence. Department of Transportation ex rel. People v. Hunziker, 342 Ill. App. 3d 588, 593-94 (2003). Specifically, the manifest weight of the evidence standard is applied to a trial court's finding that a condemnor acted in good faith. Hunziker, 342 Ill. App. 3d at 594.

The United States and Illinois Constitutions provide that private property will not be taken without the payment of just compensation. U.S. Const., amend. V; Ill. Const. 1970, art. I, §15. A condition precedent to the exercise of the power of eminent domain is an attempt to reach an agreement with the property owner on the amount of compensation. The Eminent Domain Act requires the condemnor to undertake good-faith negotiations with a landowner before filing a condemnation action. Department of Transportation ex rel. People v. 151 Interstate Road Corp., 209 Ill. 2d 471, 480 (2004). "Because good-faith negotiations with the landowner are a condition precedent to condemnation proceedings under the Eminent Domain Act, the question of whether a condemnor has negotiated in good faith bears directly on whether the condemnor was exercising

its right of eminent domain improperly." 151 Interstate Road, 209 Ill. 2d at 480-81. Generally, whether a party to a condemnation action has acted in good faith is a question of fact. 151 Interstate Road, 209 Ill. 2d at 488. Consequently, a finding of good faith by the trial court will not be reversed on review unless it was against the manifest weight of the evidence. 151 Interstate Road, 209 Ill. 2d at 488. "A [trial court's] judgment is against the manifest weight of the evidence only if the opposite conclusion is apparent or when findings appear to be arbitrary, unreasonable, or not based on the evidence." International Capitol Corp. v. Moyer, 347 Ill. App. 3d 116, 122 (2004).

In City of Naperville v. Old Second National Bank of Aurora, 327 Ill. App. 3d 734 (2002), a case relied upon by defendant, Naperville brought condemnation proceedings against the defendants to acquire certain property in order to construct improvements for its downtown River Walk. City of Naperville, 327 Ill. App. 3d at 736. The trial court found Naperville had failed to make a *bona fide* attempt to agree on just compensation for the property prior to the filing of the condemnation action because the city offered the defendants only $200,000, while the city had appraised the property value at $500,000. City of Naperville, 327 Ill. App. 3d at 740. The trial court concluded it was unreasonable for the defendants to counteroffer when the city repeatedly made offers that were significantly below market value. City of Naperville, 327 Ill. App. 3d at 741. The court explained:

> "The negotiations that precede a condemnation proceeding cannot
> be viewed in the same manner as negotiations between a private
> buyer and seller. In a private negotiation, either party can walk

away from the negotiation if the price is not right. However, in a condemnation proceeding, the property owner does not have the same luxury. If the property owner cannot agree to compensation with the condemning authority, he will incur the cost and expense of defending against a condemnation proceeding in order to secure the payment of the fair market value of the property. It is for this reason that the condemning authority must make a good faith effort to negotiate prior to filing suit." City of Naperville, 327 Ill. App. 3d at 740-741.

See also Department of Transportation v. Hunziker, 342 Ill. App. 3d 588, 597 (2003). The appellate court ultimately affirmed after concluding that the trial court's findings that Naperville had failed to negotiate in good faith before filing suit was not against the manifest weight of the evidence. City of Naperville, 327 Ill. App. 3d at 742.

Turning to the case at hand, we note there is very little case law to guide our determination of what constitutes good-faith negotiation by a municipality before exercising its rights under the Eminent Domain Act. We find, however, that the only reasonable conclusion is the City failed to make a good faith effort to agree on just compensation with defendant before filing the instant lawsuits. The City simply sent him the standard form letters providing a legal description of the property, an offer price, which in each case turned out to be substantially below the City's appraised value just months later, and contact information on how to reach the City if he wanted to discuss the sale of the property. According to the letters, the basis for the City's

determination of just compensation was two appraisals made independently by unnamed professional appraisers. There was no indication as to why, or if, the City relied more upon one of the two appraisals when determining the fair market value, which would clearly be relevant to a property owner when deciding whether to accept the City's offer. While there was no specific requirement that the City attach the appraisals with the offers, it would seem reasonable to have done so under the circumstances of this case, particularly since the City was seeking a response from defendant within 10 days, and there was no way for him to know the methodology used for determining the offer price.

Most troubling to this court for purposes of a good-faith analysis is the discrepancy between the initial offer prices and the subsequent values reflected in both the City's and defendant's appraisals. We are unpersuaded by the City's argument that its initial offers were lower because they were based upon market values around the time the letters were sent and property values had increased in the area. The City filed suit against defendant 83 days, 121 days, and 41 days, respectively, after issuing the letters, and we find it incredible that vacant parcels in a blighted area of the city would increase so dramatically in such a short period of time. The City urges us to believe the following: the value of 2342-44 West Monroe more than doubled in the span of four months; 2348 West Monroe increased in value from $68,000 to $135,000 in approximately six weeks; and 2350 West Monroe increased in value from $110,000 to $180,000 in less than three months. We believe the only reasonable conclusion is that the City offered defendant amounts significantly below the fair market value for all three parcels which, as the court explained in City of Naperville, does not constitute good-faith negotiation.

The City is correct when it maintains there is no rigid "touch the bases approach" to good-faith negotiation. Under the totality of the circumstances, however, we find that the trial court's determination that the City met the requirement with defendant to be against the manifest weight of the evidence because of the extremely low offers, along with the short period of time the offers remained open and the lack of any appraisal reports provided with the offers. We are also unpersuaded by the City's reliance on Peoples Gas Light & Coke Co. v. Buckles, 24 Ill. 2d 520 (1962), for the proposition that no further negotiation was required before filing suit because defendant failed to respond to the offer letters. In contrast to the instant case, the condemning authority in Peoples Gas personally contacted the defendants after sending each of them an offer letter, and the supreme court found that no practical solution could have been reached through further negotiation between the parties due to a significant difference between the offering price and the demand price due to different theories on how to value the property. Peoples Gas, 24 Ill. 2d at 527-28. Here, there was no such attempt at good-faith negotiation by the City, and in two of the three cases, the 10-day offer period had expired before defendant received the letter. The City was aware of the date defendant received the letters due to the signed return receipts, but it did not attempt to make any further contact with him. Furthermore, we find no basis to conclude that defendant's failure to respond to the letters negated the City's obligation to have made a *bona fide* attempt to agree on just compensation before filing each of the condemnation actions. We reiterate, as did the appellate court in City of Naperville and Hunziker, that many property owners in defendant's position would not be able to incur the legal expenses to challenge the City, which is why a good- faith effort to negotiate is necessary before a condemnor exercises its rights under

1-06-1896

the Eminent Domain Act.

For the foregoing reasons, we find it was against the manifest weight of the evidence for the trial court to conclude that the City proceeded in good-faith negotiations prior to filing suit, and we reverse the trial court's order denying defendant's traverse and motion to dismiss.

Because our ruling with respect to the first issue is dispositive of this appeal, there is no need for us to address defendant's claim that section 7-121 of the Eminent Domain Act is unconstitutional as applied in this case.

Accordingly, we reverse the order of the circuit court denying defendant's traverse and motion to dismiss and remand for further proceedings consistent with this opinion.

Reversed and remanded.

HOFFMAN, P.J., and HALL, J., concur.