No. 3-07-0877

Filed July 8, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| DEPARTMENT OF TRANSPORTATION, STATE OF ILLINOIS | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| LEROY W. ANDERSON, | ) ) | |
| Defendant-Appellant, | ) ) | |
| and | ) ) | No. 07-ED-2 |
| SPEEDWAY SUPERAMERICA LLC, a Delaware limited liability company, as successor to Emro Marketing Company, a Delaware corporation; EDWARD T. O'CONNOR, III, Peoria County Treasurer; UNKNOWN OWNERS AND NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) | Honorable |
| Defendants-Appellees. | ) ) ) | Joe Vespa, Judge, Presiding. |

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff Illinois Department of Transportation (Department) filed a complaint for condemnation of a parcel of property owned by defendant Speedway Superamerica LLC (Speedway). Speedway and defendant Leroy Anderson, as an interested party, filed a traverse and motion to dismiss, which the trial court denied. On appeal,

Anderson contends that the trial court's quick-take order must be reversed because the Department neglected to provide him with statutory letters of notice and failed to negotiate in good faith prior to filing its complaint. We affirm.

In 1971, Anderson owned a parcel of land along Illinois Route 40 which Marathon Oil Company (now known as Speedway) wanted to purchase for use as a gas station. The parties entered into an option to purchase, contingent upon Speedway securing an access permit to Route 40 from the Department. The Department refused to issue Speedway a permit unless Speedway agreed to sell the State a 52-foot strip off the east end of the property for future widening of Route 40. As a result of Speedway's negotiations with the Department, Speedway and Anderson entered into an "Option to Purchase Amendment." The amendment stated that Anderson agreed to convey an additional 52 feet on the west side of the parcel in consideration for which Speedway would pay to Anderson the price of the 52-foot strip on the east side of the parcel when the Department acquired the strip at a later date.

Anderson subsequently conveyed the entire parcel, including the additional 52-foot strip at the west end, to Speedway by warranty deed with no reservations. The option to purchase amendment was not incorporated in or attached to the deed.

In 1993, the Department made plans to widen Route 40. At that time, Anderson recorded an affidavit with the recorder of deeds

2

office, which referenced the August 1971 option to purchase amendment and indicated that it was being filed to provide notice "of the interest claimed by [Anderson] in any proceeds."

One year later, the Department began developing preliminary engineering plans for the project. The plans provided for the Department to acquire the entire Speedway parcel, not just the easterly 52-foot portion. In 1997, the Department appraised the Speedway parcel and made an offer of $352,500. The offer included acquisition of the store building. Speedway rejected the offer.

In March 2004, the Department engineers completed the "pre-final" engineering plans for the project. The plans and plats showed the Department needed to acquire the entire parcel from Speedway. In April of 2004, the Department appraiser Randy Neff viewed the parcel and submitted a written appraisal valuing the property at $643,000. Searle contacted Speedway and advised the company that the Department had completed its appraisal and would soon make an offer. Speedway closed the station in June 2004.

Between April 2004 and May 2005, when the offer was finally submitted, there were numerous conversations and negotiations between the parties. Department acquisition specialist Rhonda Searle testified that she negotiated with Speedway and kept a log of all contacts. Although she discussed Anderson's interest with the Department's title company, the Department was "not sure what Anderson's interest was." Searle said she was instructed to obtain

3

a quit claim deed from Anderson once the offer was accepted.

The Department finally transmitted an offer to Speedway for $643,000 on May 2, 2005. The offer provided for the acquisition of the Speedway parcel by dedication rather than fee simple title and showed the highest and best use as a convenience store/gas station. The offer included a quit claim deed from Anderson to the State. However, Searle did not transmit the offer or a quit claim deed to Anderson.

In October of 2006, the Department reappraised the property. The revised report appraised the property at $379,000. The Department sent an offer to Speedway in the revised amount. The new offer included acquisition of the station, but did not include a quit claim deed from Anderson to the State. Unlike the 2005 offer, the offer and appraisal indicated that the highest and best use of the land was as a vacant lot. Speedway refused the offer, and the two parties failed to reach an agreement.

The Department sent a letter to Anderson in January of the following year, requesting that Anderson sign an enclosed quit claim deed to the State. The letter did not include a copy of the appraisal or statement of the basis of compensation. Anderson declined to execute the quit claim deed.

In April 2007, the Department filed its complaint for condemnation along with a motion for immediate vesting of title under the "quick-take" provisions of the Eminent Domain Act (Act)

4

(735 ILCS 30/20-5-5, 25-7-103.1 (West 2006)). Anderson and Speedway both filed traverses and motions to dismiss. Anderson's traverse was based on the Department's failure to provide statutory letters pursuant to sections 10-5-15(c) and 10-5-15(d) of the Act (735 ILCS 30/10-5-15(c),(d) (West 2006)) and the Department's failure to negotiate in good faith prior to filing its condemnation complaint.

At the hearing on the quick-take and traverse motions, the trial court heard argument on Anderson's motion and indicated that he would deny the motion. At the close of the evidentiary hearing, the court set the matter over for closing arguments without ruling on either the traverse issue of good faith negotiations or the issue of preliminary just compensation. On the date set for argument, the Department and Speedway indicated that they had reached an agreement as to preliminary just compensation in the amount of $500,000. An order was entered, over Anderson's objection, denying both traverses and motions to dismiss and fixing preliminary just compensation in the amount of $500,000. Anderson filed an interlocutory appeal pursuant to Supreme Court Rule 307(a)(7). 166 Ill. 2d R. 307(a)(7).

ANALYSIS

I.

Anderson first argues that he is an "owner" within the meaning of the Act and that the Department's failure to provide him with

5

the statutorily required letters is fatal to the Department's condemnation complaint.

Under section 10-5-15 of the Act, the condemnor must first contact and advise the "property owner" of the proposed land acquisition and then send a letter "to the owner of the property" at least 60 days before filing a condemnation complaint informing the owner of any appraisal and the basis of compensation. 735 ILCS 30/10-5-15(c),(d) (West 2006). The term "owner" is not defined in the Act.

In general, ownership is described as "the collection of rights allowing one to use and enjoy property, including the right to convey it to others." Black's Law Dictionary 1131 (7th ed. 1999). Under common law, ownership is not restricted to mere title. However, there are certain minimum elements that must be present for a person to be considered an owner of property. Mason v. Rosewell, 107 Ill. App. 3d 943 (1982). An owner can include one who has control or occupation of the land although not being the record titleholder, but that person must possess the rights to control and enjoy the property. Wheaton College v. Department of Revenue, 155 Ill. App. 3d 945 (1987). The primary elements of ownership are the rights of possession, use and enjoyment, the right to change or improve the property, and the right to alienate the property. Wheaton College, 155 Ill. App. 3d 945.

Anderson argues that he is an "owner" based on the 1971 option

6

to purchase amendment and the affidavit he recorded in 1993. Neither of these documents gives him an ownership interest in the property.

First, the option to purchase amendment concerned an agreement between Anderson and Speedway that, in the event the Department acquired the eastern 52-foot portion of the property, Speedway would remit the compensation it might receive from the State for that portion of the property to Anderson. That agreement was not recorded. Two months later, in October 1971, Anderson conveyed the entire parcel of property to Speedway by warranty deed. The warranty deed does not reference or incorporate the amendment to the option. The deed does not contain a reservation of any ownership or other interest in Anderson. Thus, Anderson cannot assert ownership of the 52-foot section. In re Marriage of Kendra, 351 Ill. App. 3d 826 (2004) (execution of warranty deed, without reservations, extinguishes all ownership rights in real property); see also Brown v. Lober, 75 Ill. 2d 547 (1979).

Second, the affidavit filed in 1993 merely recited that Anderson had an interest in the proceeds of the sale. It did not state that Anderson held an ownership interest in the eastern portion of the parcel. Thus, the affidavit does not give Anderson an ownership interest in the property.

Moreover, Anderson is not an owner under common law. Regardless of actual title, Anderson does not possess, use or

7

otherwise control the property. See <u>Wheaton College</u>, 155 Ill. App. 3d 945. All that he possesses is a potential interest in any condemnation proceeds that might be received by Speedway.

Anderson conveyed the entire parcel of real property, including the eastern portion, to Speedway by warranty deed. Consequently, he is not an owner of the property for purposes of the Act, and the Department was not required to negotiate with him prior to filing its complaint.

## II.

Next, Anderson argues that even if he is not an owner, he still has standing, as a "party interested" in the equity of the property, to assert that the Department breached its common law duty to negotiate in good faith. Anderson bases his argument on section 10-5-10(a) of the Act, which provides that a condemnation complaint may be filed when, among other things, the compensation to be paid for the property "cannot be agreed upon by the parties interested." 735 ILCS 30/10-5-10(a) (West 2006).

An interlocutory appeal from an order denying a traverse and motion to dismiss is authorized by Supreme Court Rule 307(a)(7) (166 Ill. 2d R. 307(a)(7)) and is limited to the three issues delineated in subsection 20-5-10(b) of the Act. <u>Department of Transportation v. 151 Interstate Road Corp.</u>, 209 Ill. 2d 471 (2004); <u>Southwestern Illinois Development Authority v. Vollman</u>, 235 Ill. App. 3d 32 (1992). Those three issues are (1) whether the

8

plaintiff has the authority to exercise the right of eminent domain, (2) whether the property sought by plaintiff is subject to exercise of the right of eminent domain, and (3) whether the right of eminent domain is being properly exercised in the proceedings. 735 ILCS 30/20-5-10(b) (West 2006). Good faith negotiations are part of the larger issue of the propriety of exercising eminent domain power. Department of Transportation v. Hunziker, 342 Ill. App. 3d 588 (2003). Thus, an attempt to reach an agreement with a property owner is a condition precedent to the exercise of the right of eminent domain. 151 Interstate Road Corp., 209 Ill. 2d 471.

For a party to have standing, the party must suffer some injury in fact to a legally cognizable interest and must have sustained, or be in immediate danger of sustaining, a direct injury as a result of the complained-of conduct. Brockett ex rel. Brockett v. Davis, 325 Ill. App. 3d 727 (2001). That a party may suffer in some abstract way will not suffice; there must be a direct injury to his property or rights. Brockett, 325 Ill. App. 3d at 730-31.

In this case, Anderson attempts to raise a challenge to the third issue under section 20-5-10(b), claiming that the Department failed to properly exercise its right of eminent domain because it did not negotiate with Speedway in good faith. However, Anderson lacks any basis to challenge the propriety of the negotiations

between the Department and the land owner concerning the amount of compensation for property in which he has no claim of ownership. See 151 Interstate Road Corp., 209 Ill. 2d 471. According to the statute, the State is only required to conduct good faith negotiations with the "owner of the property." 735 ILCS 30/10-5-15, 20-5-10(b) (West 2006). As we have previously determined, Anderson does not have an ownership interest in any portion of the real estate at issue. Thus, Speedway was the only party with whom the Department was required to negotiate before filing an eminent domain complaint. The Department did negotiate with Speedway, and the parties were unable to reach an agreement.

In effect, Anderson is attempting to assert the arguments raised by Speedway in its traverse and motion to dismiss. Speedway has not appealed from the trial court's ruling, and Anderson does not have a legally cognizable right to pre-filing negotiations. Accordingly, Anderson lacks standing to challenge or seek review of the propriety of the negotiations between the Department and Speedway prior to the eminent domain action.

### III.

Anderson also claims that his status as an "interested party" in the property precluded the trial court from entering an order for preliminary just compensation based only on the agreement between the Department and Speedway.

Quick-take is a proceeding within an eminent domain

10

proceeding, whereby title and possession to property is placed in the State prior to a final determination of just compensation. Department of Public Works and Buildings v. Dust, 19 Ill. 2d 217 (1960). It is a means to prevent delays to public projects and to protect the rights of a land owner, by allowing the issue of compensation to be litigated at a later date. 151 Interstate Road Corp., 209 Ill. 2d at 478-79. Before a trial court may enter an order awarding title and preliminary compensation, there must be a finding in a quick-take hearing that the plaintiff has the right to take the subject property by eminent domain. Dust, 19 Ill. 2d at 219; 735 ILCS 30/20-5-10(b). Interlocutory appeals from quick-take hearings are limited to the three issues listed in section 20-5-10(b). Vollman, 235 Ill. App. 3d at 36. All other issues, including compensation, are subject to appeal only at the conclusion of the eminent domain proceeding. Vollman, 235 Ill. App. 3d at 36.

Anderson's interest is limited to a contractual percentage of the amount of final compensation to be paid by the Department to Speedway, the property owner. Based on the option to purchase amendment, Anderson possesses an interest in the proceeds that might be paid to Speedway and the potential value of the 52-foot parcel of real estate described in the amendment. Where, as here, an interested party merely has a stake in a portion of the condemnation proceeds, that party's rights to those proceeds

11

attaches only after the amount of just compensation has been determined by the court. See <u>Vollman</u>, 235 Ill. App. 3d 32. In this case, the issue of just compensation has yet to be determined, and Anderson may not seek review of the issue of the propriety of the amount of the preliminary just compensation in an interlocutory appeal.

CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

CARTER, J., and MCDADE, PJ., concurring.