EVANDER, J.
Southern Owners Insurance Company (“Southern Owners”) appeals an amended summary final judgment declaring that certain policies of insurance issued by Southern Owners provided coverage to Daisy Eastwood for the claims brought against her by Margarita Fiallo, as personal representative of the Estate of Damian Fiallo. Because the undisputed material facts of record do not support the trial court’s determination of coverage, we reverse.
Ms. Fiallo brought a wrongful death action against Daisy[1] and Eastwood Community Association, Inc. after seven-year-old Damian drowned in the Eastwood Community swimming pool while in Daisy’s care. Daisy owned a home in the Eastwood residential community and, thereby, was a member of the Eastwood Community Association. As a member of the Association, Daisy had a right to use the community swimming pool. The lawsuit filed by Ms. Fiallo alleged that Daisy negligently supervised Damian and, as a result, Damian drowned.
The complaint filed by Ms. Fiallo further alleged Eastwood Community Association was a homeowners’ association that owned or operated the swimming pool and, as such, had a duty to operate the pool in a reasonably safe manner. Eastwood Community Association was alleged to have breached that duty in numerous ways, thereby causing Damian’s death.
At the time of the loss, Daisy was insured under a homeowner’s insurance policy issued by Appellee, Cooperativa de Seguros Multiples de Puerto Rico (“Coo-perativa”). After Ms. Fiallo filed her wrongful death action in the underlying case, Cooperativa retained counsel to defend Daisy. At the time of the loss, Eastwood Community Association was insured under two policies issued by Southern Owners; a comprehensive general liability policy and an umbrella policy. The policies included an endorsement that extended coverage to each individual member of the Association, “but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that member’s exclusive use or occupancy.” (Emphasis added).
After the commencement of the underlying action, Cooperativa and Daisy instituted a declaratory judgment action against Southern Owners seeking a determination that Southern Owners was required to defend and indemnify Daisy for the claim brought against her by Ms. Fiallo. Subsequently, Ms. Fiallo moved to intervene in the declaratory judgment action. When the motion to intervene was granted, Ms. Fiallo filed her own declaratory judgment *441 complaint against Southern Owners. Ultimately, the trial court entered summary judgment in favor of Cooperativa, Daisy, and Ms. Fiallo, finding that Daisy was entitled to a defense and to indemnity under both of the Southern Owners’ insurance policies. This appeal followed.
The parties agree that any potential liability Daisy may have in the underlying wrongful death action would not arise from the “maintenance” or “repair” of the swimming pool. Thus, the only issue is whether Daisy has potential liability arising from the “ownership” of the pool.
In its detailed order, the trial court correctly concluded that the phrase “arising out of’ is broader in meaning than the term “caused by” and means “originating from, having its origin in, growing out of, flowing from, incident to, or having a connection with.” Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532-33 (Fla.2005).
The trial court continued its analysis as follows:
DAISY was entitled to make use of the pool solely because of her membership in EASTWOOD which arose solely from her ownership of her unit. In other words, her right to use the pool, to invite the decedent to use the pool or to even enter the pool area was an incident of her ownership interest in the EASTWOOD common elements, including the pool. More simply stated, but for her ownership, neither DAISY nor Damian Fiallo, would have been in the pool area, in the pool itself or even subject to the provisions that guests must be super-, vised while at the pool.
If Daisy did, in fact, have an ownership interest in the Eastwood common areas, Appellees’ argument would be stronger. However, as all parties acknowledged in their supplemental briefs, the record is extremely sparse on the issue of whether individual members of the Eastwood Community Association have any ownership interest in the community swimming pool.[2] Section 720.301(2), Florida Statutes (2009), suggests that Daisy may not have an ownership interest in the community pool:
“Common area” means all real property within a community which is owned or leased by an association or dedicated for use or maintenance by the association or its members, including, regardless of whether title has been conveyed to the association:
(a) Real property the use of which is dedicated to the association or its members by a recorded plat; or
*442 (b) Real property committed by a declaration of covenants to be leased or conveyed to the association.
In the instant case, the record is devoid of deeds, association articles of incorporation and/or bylaws, plats, declarations of covenants, or any other documents or evidence [3] that would tend to reflect Daisy’s specific ownership interest, if any, in Eastwood Community Association’s common areas.
Absent an ownership interest in the pool, Daisy would not be entitled to coverage under Southern Owners’ policies because her potential liability would arise, at most, out of her “use” of the pool. Although the right to use property is an indicia of ownership, it does not equate to ownership. The primary elements of ownership are the rights of possession, use and enjoyment, the right to change or improve the property, and the right to alienate the property. Ill. Dep’t of Tramp, v. Anderson, 384 Ill.App.3d 309, 322 Ill.Dee. 869, 892 N.E.2d 116, 120 (2008). Because it is unclear from the record whether Daisy had an ownership interest in the community pool, we conclude that it was error to enter summary judgment in favor of Appellees.
REVERSED and REMANDED.
ORFINGER, J., concurs.
SAWAYA, J., concurs in part, dissents in part, with opinion.

. To avoid confusion, Daisy Eastwood will be referred to as "Daisy.” It is pure coincidence that Daisy and the Association share the same name.

. Throughout the proceedings, Southern Owners has maintained that because the underlying complaint alleged that Daisy was negligent in supervising Damian, any liability on the part of Daisy did not arise out of her “ownership" interest in the parcel on which the community pool was situated. Although Southern Owners denied that Daisy had an ownership interest in the community pool in its pleadings, at times it appeared to accept opposing counsels' assertion that Daisy, as a member of the Homeowner’s Association, had an ownership interest in the common areas. Appellees’ contention that Daisy had an ownership interest in the common areas appears to have been based on caselaw involving condominiums. However, the Florida statutory scheme regarding ownership of common elements in a condominium is significantly different from the statutory scheme regulating the ownership of common areas in a homeowners’ association. Section 718.103(11), Florida Statutes (2009), expressly defines "condominium” to mean "that form of ownership of real property created pursuant to this chapter, which is comprised entirely of units that may be owned by one or more persons, and in which there is, appurtenant to each unit, an undivided share in common elements.” By contrast, as referenced above, the statute regulating homeowners’ associations suggests that title to the common areas is often held by the association.

. Appellees cite to the deposition testimony of Cheryl Simmons, Eastwood Community Association’s manager, for support of its contention that Daisy had an ownership interest in the community pool. However, a close review of Ms. Simmons’ testimony reflects that she gave conflicting testimony on this issue. She testified at one point that the common areas were owned by the Association and at another point that they were owned by the members of the Association. Furthermore, it is unclear from her deposition whether Ms. Simmons had die knowledge necessary to be able to render an opinion on this issue.