2016 IL App (1st) 150960

SIXTH DIVISION
June 30, 2016

No. 1-15-0960

| | | |
|---|---|---|
| THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| SOUTH BARRINGTON OFFICE CENTER, a Limited Liability Company; BANK OF AMERICA, N.A.; GUARDIAN LIFE INSURANCE COMPANY OF AMERICA; TOLLWAY, LLC; THE CIT GROUP EQUIPMENT FINANCING, INC.; ARA-SOUTH BARRINGTON DIALYSIS, LLC; UNKNOWN OWNERS; AND NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) | No. 14 L 50828 |
| Defendants | ) ) | |
| (South Barrington Office Center, a Limited Liability Company, Defendant-Appellant). | ) ) ) | Honorable James M. McGing, Judge Presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion. Justices Hoffman and Delort concurred in the judgment and opinion.

¶ 1    Plaintiff-appellee, The Illinois State Toll Highway Authority (the Authority), filed the instant suit for condemnation against defendant-appellant, South Barrington Office Center, a limited liability company (South Barrington), and defendants, Bank of America, N.A., successor to LaSalle Bank, N.A.; Guardian Life Insurance Company of America; Tollway, LLC; The CIT Group Equipment Financing, Inc.; Ara-South Barrington Dialysis, LLC; unknown owners; and non-record claimants. The Authority sought to utilize its power of eminent domain to acquire certain interests in three parcels of property necessary to complete improvements to Interstate 90.

¶ 2    One of the defendants, Guardian Life Insurance Company of America (Guardian), filed a traverse and motion to dismiss, challenging the Authority's right to condemn the property. South Barrington, the owner of the parcels at issue, adopted the arguments therein as its own traverse

and motion to dismiss. The Authority responded by filing a motion to strike both the motion filed by Guardian and the motion filed by South Barrington, and the motion to strike was granted. The circuit court subsequently entered an order that found–over defendants' objection–that the Authority was authorized to condemn the parcels and also awarded preliminary compensation. South Barrington has filed the instant interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(7) (eff. Feb. 26, 2010). For the following reasons, we affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4       On October 30, 2014, the Authority initiated this lawsuit by filing a complaint for condemnation. Therein, the Authority contended that it was a state agency "authorized to acquire, construct, relocate, operate, regulate and maintain a system of toll highways through and within the State of Illinois," pursuant to the Toll Highway Act (Act). 605 ILCS 10/1 *et seq.* (West 2014). Pursuant to that statutory authority and to various resolutions passed by the Authority's board of directors (including Resolution No. 20446), the Authority had determined that certain improvements needed to be made to "the I-90 East Corridor *** as part of the Jane Addams Memorial Tollway Project" (project). The complaint further contended that, in order to complete the project, the Authority had been authorized to acquire three parcels of property located in South Barrington, Illinois, which the Authority identified as parcel numbers NW-6B-13-022 (first parcel), NW-6B-13-002.01P (second parcel), and NW-6B-13-002.02A (third parcel) (collectively, the parcels).

¶ 5       The complaint and the legal descriptions attached thereto reflect that the Authority sought the acquisition of a fee simple interest in the first parcel, which contained 0.068 acres, a permanent easement in the second parcel, which contained 0.011 acres, and "any and all rights of

---

[1]This matter was previously assigned to another division of this court, but was recently transferred to the Sixth Division in April 2016.

access across the access control line" designated as the third parcel, which was comprised of 243.12 linear feet. The property index numbers (PIN) associated with these parcels are 01-34-400-005 and 06-02-200-014. South Barrington was identified as the record owner of the parcels, with the remaining defendants identified as individuals and other entities who might otherwise have an interest in the parcels. A certified letter sent to South Barrington on July 29, 2014, was also attached to the complaint, and it reflected that the Authority had offered $28,000 as compensation for the parcels.[2]

¶ 6    While the Authority asserted that it had followed all relevant statutory requirements to make a "good faith offer" to South Barrington in an effort to acquire the parcels and had made "diligent and reasonable attempts" to do so prior to filing suit, the Authority further contended that it had been unable to reach an agreement with South Barrington as to the amount of "just compensation" to be paid for the parcels. The Authority's complaint therefore asked the circuit court to ascertain and determine the amount of just compensation for the parcels and to conduct such proceedings and enter such orders as were necessary to vest the Authority with title to and possession of the interests it sought in the parcels.

¶ 7    The complaint also asked that these proceedings take place according to the "quick-take" procedure contained in the Eminent Domain Act. See 735 ILCS 30/20-5-10 (West 2014). In connection to this request, the Authority filed a "Motion for Immediate Vesting of Title" on November 12, 2014, in which it is asserted that the failure to obtain the parcels immediately would endanger the construction schedule for the entire project.

¶ 8    Guardian responded to the complaint by filing a "Traverse and Motion to Dismiss." Therein, Guardian asserted that it held an interest in the parcels as a mortgagee. Guardian further

---

[2]The record reflects that the parcels were part of a piece of property owned by South Barrington which totaled 12.44 acres.

contended that the Authority did not have the authority to condemn the parcels because it had not fully complied with the statutory requirements. Specifically, Guardian argued that the Authority: (1) failed to make a good faith effort to reach an agreement as to just compensation for the parcels, (2) improperly sought to condemn property in excess of its needs, in that the right of access control the Authority sought with respect to the third parcel actually amounted to a "blanket easement *** for which no compensation has been offered and for which no value has been assigned or determined," (3) provided an inaccurate legal description for the third parcel, and (4) failed to provide a reasonable description of the parcels in the resolutions adopted by the Authority's board of directors. South Barrington thereafter filed its own traverse and motion to dismiss, in which it simply adopted and joined in the arguments raised by Guardian.[3]

¶ 9    The Authority filed a motion to strike the traverse and motion to dismiss. The Authority challenged each of the arguments raised by the defendants. Guardian filed a written response to the motion to strike, and the Authority filed a written reply. While the Authority's motion to strike was ostensibly filed pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)), the parties attached a number of exhibits to the motion to strike, the response, and the reply.

¶ 10    On March 5, 2015, a hearing on defendants' traverse and motion to dismiss, as well as the Authority's motion to strike, was held at which no additional evidence was presented. At the conclusion of that hearing, the matter was continued to March 23, 2015, for the circuit court's ruling on both motions. On that date, the circuit court entered a written order which considered and rejected all four of defendants' arguments, with its analysis significantly relying upon the

---

[3]Because South Barrington simply adopted Guardian's arguments, only Guardian participated in the briefing below, and only South Barrington has appealed, for clarity we will hereinafter refer to the traverse and motion filed by Guardian–and adopted by South Barrington–in the singular.

exhibits attached to the parties' pleadings and memoranda. The circuit court's written order, however, concludes by stating that "Defendant's Motion to Strike the Traverse and Motion to Dismiss is granted."

¶ 11    In light of the circuit court's written order, the parties agreed that that the court should immediately hold a "quick-take hearing" pursuant to the Authority's previously filed motion for immediate vesting of title. The parties' agreement was that the hearing was "essentially going to be uncontested," in that: (1) the Authority would rest on the documents and pleadings it had already provided to the circuit court in seeking findings that it had demonstrated its statutory authority and its need to acquire the parcels by condemnation, (2) those findings would be made over the objection of the defendants, and without waiver of their right to appeal, and (3) the parties had agreed to set the amount of preliminary compensation for the parcels at $45,000.

¶ 12    The circuit court agreed to proceed in that manner and orally found that, while defendants objected to any such findings and "were not waiving any right of appeal as to these matters or as to the Court's earlier ruling this morning on the motion to strike," the Authority had properly exercised its right of eminent domain with respect to the parcels and "a stipulated finding for preliminary just compensation" would be made in the amount of $45,000. A written order reflecting those findings was entered on the same day. On April 1, 2015, South Barrington filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(7) (eff. Feb. 26, 2010).

¶ 13                                    II. ANALYSIS

¶ 14    Before turning to the merits of the substantive arguments raised on appeal, we find it useful to summarize the legal framework guiding our discussion and to resolve the parties'

disagreement regarding both the procedural posture of this matter and our resulting standard of review.

¶ 15                                    A. Legal Framework

¶ 16    The Authority was created by the Act as an "instrumentality and administrative agency of the State of Illinois," and has been granted "all powers necessary or appropriate" to "provide for the construction, operation, regulation and maintenance of a toll highway or a system of toll highways." 605 ILCS 10/1 (West 2014). The Authority is specifically granted the power "to acquire in the manner that may now or hereafter be provided for by the law of eminent domain of this State, any real or personal property (including road building materials and public lands, parks, playgrounds, reservations, highways or parkways, or parts thereof, or rights therein, of any person, railroad, public service, public utility, or municipality or political subdivision) necessary or convenient for its authorized purpose." 605 ILCS 10/9(b) (West 2014). However, "any power granted under [the] Act to acquire property by condemnation or eminent domain is subject to, and shall be exercised in accordance with, the Eminent Domain Act." 605 ILCS 10/9.7 (West 2014).

¶ 17    The Eminent Domain Act generally provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." 735 ILCS 30/10-5-5 (West 2014). The Eminent Domain Act provides a host of procedures to be followed when a property owner refuses to consent to a taking of property or does not agree with the amount of compensation offered by the government, including the filing of a complaint for condemnation in the circuit court and the possibility of a jury trial on the issue of just compensation. See 735 ILCS 30/1-1-1 *et seq.* (West 2014). Courts have recognized that an attempt to reach an agreement with a property owner regarding compensation is a condition precedent to the exercise of the power of

eminent domain, and that such an attempt to agree must be made in good faith. *Department of Transportation v. Hunziker*, 342 Ill. App. 3d 588, 594 (2003).

¶ 18    Furthermore, "[w]hen a condemnation action is filed, a landowner may challenge it by filing a traverse and motion to dismiss." *City of Chicago v. Midland Smelting Co.*, 385 Ill. App. 3d 945, 965 (2008). A traverse and motion to dismiss challenges a plaintiff's right to condemn a defendants' property (*Lake County Forest Preserve District v. First National Bank of Waukegan*, 154 Ill. App. 3d 45, 50-51 (1987)), and a "traverse, by definition, is a denial of a material allegation of fact" (*Forest Preserve District of Du Page County v. Miller*, 339 Ill. App. 3d 244, 250 (2003)).

¶ 19    In addition to the above principles, generally applicable to condemnation proceedings under the Eminent Domain Act, the Authority is also authorized to employ a statutory "quick-take" condemnation procedure "for the acquisition of land or interests therein for highway purposes." 735 ILCS 30/25-7-103.1 (West 2014). The Authority thus, "at any time after the complaint [for condemnation] has been filed and before judgment is entered in the proceeding, may file a written motion requesting that, immediately or at some specified later date, the plaintiff *** be vested with the fee simple title (or such lesser estate, interest, or easement, as may be required) to the real property, or a specified portion of that property, which is the subject of the proceeding, and be authorized to take possession of and use the property." 735 ILCS 30/20-5-5(b) (West 2014).

¶ 20    A timely hearing on such a motion is to be scheduled by the circuit court, with the Eminent Domain Act providing that "[a]t the hearing, if the court has not previously, in the same proceeding, determined that the plaintiff has authority to exercise the right of eminent domain, that the property sought to be taken is subject to the exercise of that right, and that the right of

eminent domain is not being improperly exercised in the particular proceeding, then the court shall first hear and determine those matters." 735 ILCS 30/20-5-10(b) (West 2014). If those issues are resolved in favor of the plaintiff, the court then hears the issues raised by the plaintiff's motion for taking, including whether a reasonable necessity exists for taking the property in the manner requested in the motion. 735 ILCS 30/20-5-10(c) (West 2014). If all those issues are resolved in favor of the plaintiff, the court then makes a preliminary finding of the amount constituting just compensation. *Id.*

¶ 21   Additional statutory provisions outline the procedures that are subsequently to be employed by the circuit court to vest title with a plaintiff and make a final determination of just compensation. See 735 ILCS 30/20-5-15 to 20-5-50 (West 2014).

¶ 22                     B. Procedural Posture and Standard of Review

¶ 23   We next address some confusion and disagreement between the parties regarding the procedural posture of this matter, and our resulting standard of review on appeal.

¶ 24   The procedure followed below was somewhat unusual, and on appeal the Authority and South Barrington variously contend that the issue on appeal is the propriety of the "dismissal" or the "denial" of the traverse and motion to dismiss. They also dispute whether the circuit court's ruling should be reviewed under a *de novo* or a manifest weight of the evidence standard. Neither party is entirely correct regarding the present status of the matter before this court or the resulting standard of review.

¶ 25   First, while the Authority filed a motion to strike the traverse and motion to dismiss pursuant to section 2-615 of the Code, the memoranda filed by the parties with respect to that motion made extensive use of additional exhibits. "In ruling on a section 2-615 motion, the court may not consider affidavits, products of discovery, documentary evidence not incorporated into

the pleadings as exhibits, or other evidentiary materials." *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29 (2003).

¶ 26    Additionally, the prayer for relief in the Authority's motion to strike and in its reply asked both that the motion to strike be granted and the traverse and motion to dismiss be denied. Similarly, the prayer for relief in Guardian's response to the motion to strike asked both that the motion to strike be denied and the traverse and motion to dismiss be granted. Although the circuit court considered the substantive merits of each argument raised in the traverse and motion to dismiss, the initial written order entered on March 23, 2015, provided only that "Defendant's Motion to Strike the Traverse and Motion to Dismiss is granted."

¶ 27    Nonetheless, in light of this written order the parties agreed that the court should immediately hold a "quick-take hearing" that was "essentially going to be uncontested" in that the Authority would rest on the documents already presented to the circuit court. The circuit court would also make findings regarding the Authority's exercise of its right of eminent domain, and those findings would be made over defendants' objection and with the understanding that defendants "were not waiving any right of appeal as to these matters or as to the Court's earlier ruling *** on the motion to strike." The circuit court entered an order reflecting this agreement on March 23, 2015. The notice of appeal filed by South Barrington indicates that it appeals the circuit court's order of "03/23/15," and asks this court to reverse that order and "to grant the Traverse and Motion to Dismiss, and to remand with instructions consistent with said relief."

¶ 28    South Barrington filed this appeal pursuant to Illinois Supreme Court Rule 307(a)(7) (eff. Feb. 26, 2010), which allows for an interlocutory appeal as of right with respect to interlocutory orders "determining issues raised in proceedings to exercise the right of eminent domain under

section 20-5-10 of the Eminent Domain Act, but the procedure for appeal and stay shall be as provided in that section." As noted above, section 20-5-10 of the Eminent Domain Act outlines the procedure to be employed by the circuit court at an initial hearing following the request of a plaintiff to employ the statutory "quick-take" condemnation procedure. See 735 ILCS 30/20-5-10 (West 2014).

¶ 29    Subsection (b) thereof specifically provides that if the court has not previously determined that the plaintiff has the authority to condemn the property, that the property is subject to the exercise of that right, and that the right of eminent domain is not being improperly exercised, "then the court shall first hear and determine *those matters*. The court's order on *those matters* is appealable ***." (Emphases added.) 735 ILCS 30/20-5-10(b) (West 2014). Pursuant to subsection (c), only if those issues are resolved in favor of the plaintiff does the court then hear the issues raised by the plaintiff's motion for taking, including whether a reasonable necessity exists for taking the property in the manner requested in the motion. 735 ILCS 30/20-5-10(c) (West 2014). An interlocutory appeal brought pursuant to Rule 307(a)(7) is therefore "limited to the three issues delineated in subsection 20-5-10(b) of the Act. [Citations.] Those three issues are (1) whether the plaintiff has the authority to exercise the right of eminent domain, (2) whether the property sought by plaintiff is subject to exercise of the right of eminent domain, and (3) whether the right of eminent domain is being properly exercised in the proceedings. [Citation.]" *Department of Transportation v. Anderson*, 384 Ill. App. 3d 309, 313 (2008). "All other issues, including the issues of compensation, necessity and constitutionality are appealable at the conclusion of the eminent domain proceeding." *Southwest Illinois Development Authority v. Vollman*, 235 Ill. App. 3d 32, 36 (1992).

¶ 30    Thus, regardless of how the parties have attempted to frame the issues–both below and on appeal–the only issues presently before this court are: (1) whether the Authority has the authority to exercise the right of eminent domain, (2) whether the parcels sought by the Authority are subject to the exercise of that right of eminent domain, and (3) whether the right of eminent domain is being properly exercised in the proceedings. *Anderson*, 384 Ill. App. 3d at 313. In the context of ruling on the motion to strike the traverse and motion to dismiss and in entering the award of preliminary just compensation, the circuit court resolved these matters in favor of the Authority.

¶ 31    On appeal, a circuit court's ruling on a traverse and motion to dismiss is generally subject to a manifest weight standard of review, while any questions of law or issues of statutory interpretation resolved by the circuit court are reviewed *de novo*. *Hunziker*, 342 Ill. App. 3d at 593-94. The *Hunziker* court specifically applied this standard in the context of an interlocutory appeal from a quick-take proceeding brought pursuant to Rule 307(a)(7).

¶ 32    In another prior Rule 307(a)(7) appeal, our supreme court indicated that any questions of law or issues of statutory interpretation are to be reviewed *de novo*. *Department of Transportation v. 151 Interstate Road Corp.*, 209 Ill. 2d 471, 485 (2004). In that same case, after recognizing that the issue of good-faith was usually a factual one and that the circuit court in that matter had held an evidentiary hearing where testimony was presented, our supreme court applied a manifest weight of the evidence standard to the review of the circuit court's good-faith finding. *Id.* at 488-90. This analysis was consistent with our supreme court's general rule that, in civil cases, courts of review are to "review legal issues *de novo* and factual issues under a manifest weight of the evidence standard." *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 542 (2007).

¶ 33 However, in various other circumstances our supreme court has also previously indicated that "[w]here the circuit court does not hear testimony and bases its decision on documentary evidence, the rationale underlying a deferential standard of review is inapplicable and review is *de novo.*" *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007); see also *In re Estate of Funk*, 221 Ill. 2d 30, 35 (2006) (noting that where the issues presented on appeal turn on the documentary evidence and on questions of law, appellate review is *de novo*). That is the exact situation presented here, where no evidentiary hearing was held and the circuit court made its legal and factual findings based solely on the documentary evidence presented by the parties.

¶ 34 Ultimately, while it is clear that we should review any questions of law or issues of statutory interpretation *de novo*, the standard we should apply to the circuit court's factual findings in this particular matter is not entirely settled. As we explain below, however, we conclude that the circuit court's factual findings were correct under either a *de novo* or manifest weight of the evidence standard.

¶ 35                    C. South Barrington's Substantive Arguments

¶ 36 With that background, we now turn to the substantive issues South Barrington raises on appeal.

¶ 37 South Barrington first contends that the Authority's complaint was fatally flawed, because no "reasonable description" of the actual parcels the Authority sought to condemn was included in Resolution No. 20446, adopted by the Authority's board of directors. Because this argument relates to the question of whether the Authority's right of eminent domain is being properly exercised in this proceeding, we conclude that it is properly before this court in this Rule 307(a)(7) appeal. *Anderson*, 384 Ill. App. 3d at 313.

¶ 38 As this court has previously explained, "[t]he law is clear that a public body may not exercise the power of eminent domain unless it has manifested its determination to exercise that power by some official action of record. [Citations.] *** [T]he supreme court [has] described an enabling ordinance as the foundation of an eminent domain action [citation]. The law is also clear that the property to be condemned must be reasonably described in the enabling action of the condemnor, be it an ordinance or a resolution; and the failure to so describe the property is fatal to the petition to condemn." *Illinois State Toll Highway Authority v. DiBenedetto*, 275 Ill. App. 3d 400, 405 (1995).

¶ 39 Here, the record reflects that Authority's board of directors passed Resolution No. 20446 on August 28, 2014. Therein, the board specifically stated that it had previously passed other resolutions which "authorized acquisition of needed parcels and expenditures of up to $18,400,000.00 for any and all land acquisition fees and costs needed" for the project. Resolution No. 20446 also acknowledged that prior resolutions had identified specific parcels "that may need to be acquired by condemnation." The stated purpose of Resolution No. 20446 was to amend those prior resolutions to "identify and add additional parcels to provide [the Authority] the authority to acquire all real estate interests necessary for [the project]; including fee title, permanent easements, temporary easements and access control." The *DiBenedetto* decision was specifically cited therein, with the text of the resolution indicating that the board of director's intent was to "reasonably describe the real property that may need to be acquired by eminent domain."

¶ 40 Resolution No. 20446 thus, specifically provided that "[a]cquisition was authorized for any and all needed real property and interests in real estate and includes but is not limited to" the specific parcels identified in an attached exhibit. The resolution also provides that "[i]n the event

that all or the part" of those identified parcels could not be successfully purchased, the Authority was authorized to acquire those parcels "by eminent domain." The exhibit contains descriptions for dozens of properties the Authority was authorized to acquire for purposes of completing the project, with those properties identified by parcel name, PIN number or legal description, and county. Among the properties identified in the attached exhibit was a parcel identified as parcel number "NW-6B-13-002." The exhibit indicated that this parcel was comprised of PINs 01-34-400-005, 01-34-400-077 and 06-02-200-014, and that the parcel was situated in Cook County.

¶ 41    It is undisputed that parcel number NW-6B-13-002, as described in the resolution, identified the entirety of the approximately 12-acre property owned by South Barrington adjacent to the project.[4] The parties also do not seem to dispute, and we would certainly agree, that Resolution No. 20446 clearly authorized the Authority to condemn that entire property if it could not be purchased, in that the resolution at the very least "reasonably described" the entirety of South Barrington's property.

¶ 42    However, the Authority's complaint in this matter only sought condemnation of a small portion of that entire property, *i.e.*, the acquisition of a fee simple interest in the 0.068-acre first parcel, a permanent easement in the 0.011-acre second parcel, and "any and all rights of access across" the 243.12 linear feet designated as the third parcel. South Barrington has complained, both below and on appeal that the description of the entirety of its property contained in Resolution No. 20446 thus did not amount to a reasonable description of the specific, small

---

[4]South Barrington's property is actually described in a portion of the exhibit identifying parcels "previously identified," rather than in a section describing "added identified parcels." Thus, it is apparent from the record that the acquisition of South Barrington's property was actually authorized in a prior resolution, and that this authorization was simply reaffirmed in Resolution No. 20446. By motion, the Authority attempted to supplement the record on appeal with the prior resolution, Resolution No. 20274, which first authorized acquisition of South Barrington's property. That motion was previously denied by another division of this court "for want of stipulation or certification." The Authority's complaint did, however, specifically reference Resolution No. 20274 as being among a number of other prior resolutions amended by Resolution No. 20446.

subsection of that property which the Authority ultimately sought to acquire by eminent domain, a flaw that is fatal to the Authority's instant condemnation suit.

¶ 43    We disagree. The law requires a *reasonable* description, not an exact one. Here, Resolution No. 20446 itself reflects that the project would require the expenditure of up to $18.4 million to acquire certain property interests in dozens of different identified parcels of land. Those rights include "all real estate interests necessary for [the project]; including fee title, permanent easements, temporary easements and access control." Importantly, recognizing that an agreement to purchase "all or the part" of each of those parcels may not be reached, the Authority was granted the power to acquire the necessary property by eminent domain.

¶ 44    We fail to see how the requirement for a *reasonable description* of the parcels subject to condemnation in this case is not satisfied by Resolution No. 20446, where the resolution specifically identifies the PIN numbers inside, which those parcels were contained, specifically provides for the acquisition of the very types of property interests sought by the Authority in this case (*i.e*., fee title, a permanent easement, and access control), and specifically authorizes a condemnation proceeding when no agreement can be made with respect to "all or the part" of each of the parcels identified therein.

¶ 45    Nor are we convinced that the cases cited by South Barrington on appeal mandate a different result. In *DiBenedetto*, the resolution only generally authorized condemnation of property at "the intersection of Beverly Road and the Northwest Tollway." *DiBenedetto*, 275 Ill. App. 3d at 405. This court recognized this to be an insufficient description after recognizing that the property sought to be condemned in that suit "is at the intersection of Beverly Road and the Northwest Tollway, but so is other property." *Id*. Here, the Authority specifically identified South Barrington's property by parcel name, PIN number, and county.

¶ 46    In *Miller*, this court found a resolution authorizing condemnation insufficient where it specifically applied to property "described in Exhibit A and depicted in Exhibit B," but "Exhibit A, the legal description, described one parcel of land, while exhibit B, the plat map, depicted a different, larger parcel of land." *Miller*, 339 Ill. App. 3d at 254. There is no such inconsistency contained within Resolution No. 20446 or the exhibit attached thereto.

¶ 47    In *City of Rockford v. Rockford Life Insurance Co.*, 16 Ill. 2d 287, 288 (1959), the City of Rockford filed an eminent domain action to acquire a portion of the defendant's land for the purpose of extending Locust Street. Our supreme court found an ordinance providing "there is hereby established, created and designated a street to be known as Locust Street extending from the present terminus of Locust St., at North Court St. in the City of Rockford, in [an] easterly direction to the intersection with North Main Street," did not reasonably describe the property the city sought in the condemnation suit. *Id.*

¶ 48    In so ruling, our supreme court noted extensive distinctions between the property described in the ordinance and the property actually sought in the condemnation suit. Specifically, the court noted that "[i]f the proposed extension of Locust Street in an easterly direction to North Main Street was simply a projection of the existing course of Locust Street, it would involve a different portion of appellant's property than that which is described in the petition in this case. Moreover, the width of the existing street is 50 feet, while the width of the strip of land described in the petition is 80 feet." *Id.* at 289. Thus, in that case the plaintiff improperly sought to condemn *more* and *different* property than was described in the ordinance. Here, the Authority is only seeking condemnation of a small portion of property explicitly described in Resolution No. 20446.

¶ 49 Finally, we reject South Barrington's reliance upon *Kreutzer v. Illinois Commerce Comm'n*, 404 Ill. App. 3d 791 (2010). First, that case involved an entirely different situation to the one presented here, *i.e.*, an appeal from an order of the Illinois Commerce Commission granting a certificate of public convenience and necessity for the construction of a new electrical transmission line that would cross a landowner's property. *Id.* at 793. Moreover, the issue on appeal in that case was the sufficiency of the evidence presented to support the finding that the transmission line was necessary, not the sufficiency of a resolution authorizing condemnation. *Id.*

¶ 50 In deciding that issue, the court did analogize the matter before it to a condemnation proceeding (*id*. at 812), but there is nothing about that decision that leads us to conclude that it offers any guidance to the completely different situation and issues presented here. Indeed, the analysis of in *Kreutzer* is replete with considerations of the necessity for the granting of a certificate of public convenience and necessity. As we noted above, any issues regarding the necessity to condemn South Barrington's property are not before this court in this Rule 307(a)(7) appeal. *Vollman*, 235 Ill. App. 3d at 36.

¶ 51 In sum, the circuit court found that a "reasonable description" of the parcels to be condemned was included in the resolutions adopted by the Authority's board of directors. Under either a *de novo* or manifest weight of the evidence standard, we agree.

¶ 52 South Barrington next argues that the circuit court improperly concluded that, even if Resolution No. 20446 did not adequately describe the parcels at issue here, it did properly delegate the authority to do so to the "Land Acquisition Manager" of the Authority and that delegated authority was properly exercised in this matter. In light of our conclusion that

Resolution No. 20446 itself was sufficient, we need not further consider this alternative argument.

¶ 53    South Barrington raises two additional substantive arguments on appeal. It first contends that the Authority's complaint for condemnation was improperly filed because the Authority failed to fully comply with certain presuit notice provisions contained in section 10-5-15 of the Eminent Domain Act. See 735 ILCS 30/10-5-15 (West 2014). South Barrington also argues that the Authority's complaint for condemnation was improperly filed, because the letter the Authority sent on July 29, 2014, was not made in good faith. South Barrington specifically contends that good faith was lacking because, while the letter indicated that the Authority would commence a condemnation proceeding if an agreement to purchase the parcels could not be reached, the Authority did not actually have the authorization to do so until Resolution No. 20446 was passed the following month. Because these arguments relate to the question of whether the Authority's right of eminent domain is being properly exercised in this proceeding, they are properly before this court in this Rule 307(a)(7) appeal. *Anderson*, 384 Ill. App. 3d at 313.

¶ 54    However, neither of these issues were raised below, and "[a]rguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal." *U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, ¶ 24; *Parks v. Kownacki*, 193 Ill. 2d 164, 180 (2000) (same). While South Barrington contends that we should not apply the rule of forfeiture here, we note that our supreme court has done so in this very context, *i.e.*, with respect to an argument raised for the first time on appeal from circuit court's ruling in a condemnation proceeding. *Forest Preserve District v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 67. We therefore will not further consider either of these two arguments.

¶ 55                                    III. CONCLUSION

¶ 56      For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 57      Affirmed.