2023 IL App (2d) 230119-U
No. 2-23-0119
Order filed July 19, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE DEPARTMENT OF TRANSPORTATION, | ) ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-ED-0033 |
| ROUTE 31 REALTY, LLC, | ) ) | Honorable Joel D. Berg, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court did not err in denying defendant's traverse and motion to dismiss, finding that plaintiff negotiated in good faith prior to filing a condemnation action. Affirmed.

¶ 2    In this appeal, filed pursuant to Illinois Supreme Court Rule 307(a)(7) (eff. Nov. 1, 2017), defendant, Route 31 Realty, LLC, argues that the trial court erred in denying its traverse and motion to dismiss, which alleged that plaintiff, the Illinois Department of Transportation (IDOT), failed to negotiate in good faith prior to filing against defendant its condemnation action under the

Eminent Domain Act (Act) (735 ILCS 30/1-1-1 *et seq.* (West 2022)). For the following reasons, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4     On August 30, 2022, IDOT filed a condemnation action concerning defendant's property at 209 North Front Street in McHenry. In furtherance of an expansion project on Route 31 in that area, IDOT sought fee simple title to part of the property, along with a five-year temporary easement.

¶ 5                                 A. Defendant's Motion

¶ 6     On January 10, 2023, defendant filed a traverse and motion to dismiss, arguing that IDOT did not, prior to filing the complaint, satisfy the condition precedent of negotiating in good faith. Defendant asserted that IDOT, through its appointed negotiator, sent it an offer letter on March 1, 2022. In response, defendant obtained its own appraisal and submitted a counteroffer to IDOT on August 22, 2022. However, only eight days later, on August 30, 2022, IDOT filed its complaint, serving summons on defendant on September 7, 2022. The next day, on September 8, 2022, IDOT sent defendant a letter, explaining that it had rejected defendant's counteroffer for lack of support, and inviting a more reasonable counteroffer for its consideration, claiming it hoped to achieve settlement and avoid costly litigation. In sum, defendant argued that, where it filed the complaint before rejecting defendant's counteroffer and claimed, after filing the complaint, that it wished to avoid litigation, IDOT did not act in good faith. Defendant attached to its motion IDOT's September 8, 2022, letter.

¶ 7                             B. IDOT's Response and Affidavit

¶ 8    In response, IDOT first asserted that the motion should be stricken, as it identified no defect on the face of the complaint and, to the extent it relied on facts outside of the complaint, attached no affidavits.

¶ 9    Alternatively, IDOT argued that the motion must be denied, essentially because defendant disingenuously omitted numerous facts reflecting IDOT's good-faith efforts to negotiate with defendant.  In support, IDOT attached an affidavit from its negotiator, Jonathan Abplanalp of Santacruz Land Acquisitions, detailing his negotiations with defendant's manager, David Zhang, and attorney, Paul Rickleman.  Abplanalp's affidavit recounted that, on March 1, 2022, IDOT sent defendant an introductory letter and offer package, explaining that acquisition of defendant's property was required as part of a roadway construction project.  The offer package contained the basis for computing the total approved compensation and offer to purchase, a copy of the review appraisal and appraisal, copies of the legal description and right-of-way plat, and a pamphlet explaining eminent domain.

¶ 10   On March 22, 2022, Abplanalp had a telephone conversation with Zhang, in which he discussed the highway project and the temporary easement and further explained the contents of the offer package and the acquisition process, as well as the independent appraisal methods IDOT employed to determine the fair market value of the parcel being acquired.  Abplanalp explained the Act's requirement that, prior to filing an eminent domain proceeding, IDOT provide defendant a letter with 60-days of notice.  Further, they discussed the options, should defendant reject IDOT's offer, as well as the process of submitting a counterproposal. Abplanalp requested a meeting, but Zhang said that meeting was unnecessary, as defendant was reviewing the offer package and would respond when finished.  According to Abplanalp, "I told him to let us know if they have any questions[,] and we will follow up next week if we haven't heard from them."

¶ 11    That same day, Abplanalp received an email from Rickelman, explaining that he would be representing defendant and asking Abplanalp to direct to him all communications regarding the acquisition.  On March 28, 2022, Abplanalp responded, apologizing for the delay and noting that Rickelman's email had been sent to a junk folder, but attaching a copy of the offer package, explaining that he would telephone to discuss the matter further and asking that Rickelman let him know if he had any questions.

¶ 12    On April 4, 2022, Abplanalp emailed Rickelman, asking the status of his review of the offer.

¶ 13    On April 5, 2022, (*i.e.*, more than 30 days after the original offer letter and package was sent), IDOT sent defendant a "60-day letter," explaining that, if a settlement was not reached within 60 days, the property would be referred to the Attorney General's office for condemnation proceedings.  However, the letter explained, Abplanalp remained available to assist defendant in reaching a negotiated settlement.  Return receipts reflected that the 60-day notices were received by defendant on April 9, 2022, and by Rickelman on April 13, 2022.

¶ 14    On April 14, 2022, Rickelman emailed Abplanalp, apologizing for the delay in responding to the offer and noting that defendant wanted to obtain its own valuation assessment.  The next day, Abplanalp and Rickelman both emailed and held a telephone call, discussing the project, the acquisition, and the timeframe.  Rickelman reiterated that defendant was looking into getting its own appraisal and asked whether IDOT would take title through the courts.  According to Abplanalp, "we discussed the process and explained we are here to try to settle this matter to avoid the court process[,] if at all possible.  We reviewed the 60[-]day notice time frame and discussed the process of signing documents and the time frame for payment with no formal closing."  Rickelman estimated that it would be one month or more for the new appraisal, and "we discussed

the counteroffer process and the support that would be necessary." Rickelman said he would review the information with defendant, but most likely it would proceed with getting an appraisal. Abplanalp invited Rickelman to let him know if they had questions or needed anything, but that, if he did not hear from defendant, he would follow-up in approximately 10 days.

¶ 15 On April 26, 2022, Abplanalp emailed Rickelman for an update. The next day, Rickelman responded that defendant was engaging an appraiser and would complete the analysis as soon as possible.

¶ 16 On May 11, 2022, Abplanalp emailed Rickelman for another update. Rickelman responded that he would check with the appraiser and get back to him.

¶ 17 On May 18, 2022, Abplanalp emailed Rickelman to see if he had received an update from the appraiser or a timeframe for when the appraisal would be completed. The next day, Rickelman responded that the appraiser said it would take around four weeks.

¶ 18 Abplanalp attested that,

"On May 26, 2022[,] due to inability to get property owners to come to a negotiated settlement with respect to compensation in a timely manner, I recommended that this file be referred for condemnation proceedings. Until a complaint for condemnation is filed, as is our policy, I will continue to actively pursue a negotiated settlement with the property owner."

¶ 19 On June 2, 2022, Abplanalp emailed Rickelman for an update. Rickelman responded that he was still expecting it would be a few weeks before they received the appraisal.

¶ 20 On June 16, 2022, Abplanalp emailed Rickelman, asking if the appraiser had provided any updates. On June 20, 2022, Rickelman responded that the appraiser advised to expect the valuation in two or three weeks.

¶ 21    On July 12, 2022, Abplanalp again emailed Rickelman for an update.  Rickelman responded that he would check in again with the appraiser.

¶ 22    On July 26, 2022, Abplanalp emailed Rickelman,

"Have you received any updates from your appraiser as to when they expect the appraisal to be completed?  Are you expecting to have a response to IDOT's offer soon?  *Please note that the 60-day notice was sent on 4/5/2022 and has since expired.*  Feel free to give me a call with any questions.  Please advise." (Emphasis added.)

¶ 23    Abplanalp followed up with Rickelman on August 5, 2022, and then again on August 15, 2022, asking for updates.  Rickelman responded on August 16, 2022, apologizing for the delays, summarizing the appraiser's conclusions, and representing that, when he received it, he would forward to Abplanalp the appraiser's report.

¶ 24    On August 22, 2022, Abplanalp emailed Rickelman, thanking him for the appraiser's conclusions, but asking if he had yet received the full appraisal report.  "We can submit these figures to IDOT[,] but it will be challenging for them to fully take this under consideration without the written appraisal and its underlying support."  Rickelman sent the report to Abplanalp later that day.  Abplanalp thanked him and replied that he would review the report with IDOT and get back to Rickelman when he received direction.

¶ 25    The complaint was filed on August 30, 2022 (*i.e.*, more than four months after the 60-day letter was sent).

¶ 26    On September 8, 2022, Abplanalp sent Rickelman a rejection of the counteroffer.  His affidavit attested, "Although the complaint was filed on August 30, 2022, at IDOT's direction I continued to try to negotiate a settlement through September 28, 2022."

¶ 27                                    C. Defendant's Reply

¶ 28    In reply, defendant asserted that the defect on the face of the complaint was that IDOT did allege *bona fide*, good-faith negotiations, as required by the Act.  Defendant argued that mere adherence to technical requirements does not amount to good faith, and that, while it did not dispute the timeline of events as recounted in IDOT's response, defendant disagreed that good-faith negotiations included rejecting a counteroffer after filing a complaint and confusingly suggesting that a more reasonable counteroffer be submitted in order to avoid costly litigation.  Defendant further argued that, although IDOT claimed it continued to negotiate even after filing the complaint, such tactics are not in good-faith, because IDOT then held a "hammer" and could force defendant to negotiate against itself in making additional offers, while IDOT could still foreclose on the property and force defendant to incur legal fees.  Defendant suggested,

> "A true 'continuation' of good faith negotiations could read more like: *IDOT has reviewed your counter offer and it is rejected, in order to avoid costly litigation IDOT offers "X" as just compensation, IDOT intends to file a complaint to condemn in seven (7) days; or IDOT has filed a complaint to condemn based upon our inability to agree on compensation, but still wishes to reach a negotiated settlement and offers "X" to avoid costly litigation.*" (Emphasis in original.)

¶ 29    Defendant argued that a condemnor could follow the technical requirements of the Act, yet still act in bad faith.  It urged that the risk for abuse of power was too great, and the court should grant the motion and dismiss the complaint.  Defendant did not attach any affidavits or other exhibits to the reply.

¶ 30                              D. Hearing and Court Ruling

¶ 31    On March 8, 2023, the trial court held a hearing on defendant's motion.  Defendant reiterated its position that eminent domain law requires that the state exercise authority in good

faith and that a prerequisite to filing an action is the proper exercise of authority in good faith, not just an inability to agree on compensation.

¶ 32    IDOT's attorney noted, in part, that negotiations took place over almost six months before the complaint was filed, it took defendant five months to obtain an appraisal, and Abplanalp contacted defendant 16 times inquiring into the status of the appraisal and/or counteroffer.

¶ 33    The court noted that IDOT sent an appraisal and offer, and it contacted defendant 16 times over five months before receiving a counteroffer.  "How long should they have waited?"  Further, "How many times do they have to contact?  What did they do wrong?"  Defense counsel responded that it was not defendant's position that IDOT did not wait long enough; rather, it "seems less than fair" that, when IDOT had filed litigation the day before, it told defendant to go back to the drawing board and spend more money on an appraisal to, essentially, negotiate against itself.

¶ 34    The court denied the motion.  It noted that it believed the negotiation was taken in good faith and, even if it ended in a terse communication, that did not establish the negotiations were not taken in good faith.  "It proved that the negotiations did not resolve in a mutually satisfactory manner, and there's a difference between the two."

¶ 35    On March 28, 2023, in an agreed order, the trial court ordered IDOT to file its motion for immediate vesting of title in April 2023, with the quick-take hearing scheduled for May 5, 2023. (Apparently, that hearing has been continued to July 21, 2023).  Defendant appeals.

¶ 36                                    II. ANALYSIS

¶ 37                                    A. Jurisdiction

¶ 38    We address first our jurisdiction over this appeal.  IDOT previously moved to dismiss the appeal, arguing that it is premature because the trial court addressed only the third of three elements (*i.e.*, good faith) in section 20-5-10(b) of the Act.  735 ILCS 30/20-5-10(b) (West 2020).  On May

24, 2023, we denied the motion. However, IDOT also argues on appeal that we lack jurisdiction and should dismiss the appeal. Again, we disagree.

¶ 39 Rule 307(a)(7) provides that an appeal may be taken from an interlocutory order of the court "determining issues raised in proceedings to exercise the right of eminent domain under section 20-5-10 of the Eminent Domain Act, but the procedure for appeal and stay shall be as provided in that section." Ill. S. Ct. R. 307(a)(7) (eff. Nov. 1, 2017). Section 20-5-10, in turn, provides that, when the State wishes to initiate quick-take condemnation proceedings and files a complaint, a hearing must be held and, at *or before* the quick-take hearing, the court must make three determinations. Specifically,

> "(b) At the hearing, if the court has not previously, in the same proceeding, determined that the *plaintiff has authority to exercise the right of eminent domain, that the property sought to be taken is subject to the exercise of that right, and that the right of eminent domain is not being improperly exercised in the particular proceeding*, then the court shall first hear and determine those matters. The court's order *on those matters is appealable* and an appeal may be taken from that order by either party within 30 days after the entry of the order, but not thereafter, unless the court, on good cause shown, extends the time for taking the appeal. However, no appeal shall stay the further proceedings prescribed in this Act unless the appeal is taken by the plaintiff or unless an order staying further proceedings is entered either by the trial court or by the court to which the appeal is taken." (Emphases added.) 735 ILCS 30/20-5-10(b) (West 2020).

¶ 40 IDOT argues that the right to appeal is limited to a trial court's order "on those matters," meaning that the court must first rule on all *three* of the issues defined in section 20-5-10(b), *i.e.*, that (1) plaintiff has the right to exercise the right of eminent domain, (2) the property sought to

be taken is subject to that right, *and* (3) the right of eminent domain is not being improperly exercised. Here, IDOT contends, the question whether it negotiated in good faith implicates only the last of those three factors. Accordingly, the court's ruling, which addressed only the good-faith issue, did not make findings on the first two issues and, consequently, IDOT argues that we lack jurisdiction to consider the appeal. We disagree.

¶ 41 In one of the cases upon which IDOT relies, our supreme court addressed the good-faith element in a Rule 307(a)(7) appeal. *Department of Transportation v. 151 Interstate Road Corp.*, 209 Ill. 2d 471, 479-80 (2004) ("The particular matter challenged by the Owners in this appeal is whether IDOT engaged in good-faith negotiations prior to commencing condemnation proceedings."). In doing so, the court noted that, whether IDOT negotiated in good faith was properly raised in an interlocutory appeal, and, in general, "[w]hether a particular aspect of an eminent domain proceeding can be challenged on interlocutory review therefore depends on whether it falls within *one* of the three categories of issues set forth in [section 20-5-10(b)]." (Emphasis added.) *Id.* at 479. While the trial court order at issue had addressed all three categories, nowhere did the supreme court hold that a trial court *must* address all three categories in section 20-5-10(b) before an interlocutory appeal may proceed. Again, the court held that an aspect of an eminent domain proceeding may be challenged through an interlocutory appeal if it falls into *one* of the three categories specified in section 20-5-10(b). *Id.*

¶ 42 Other case law similarly states that Rule 307(a)(7) interlocutory appeals are *limited* to challenges bearing on the three elements in section 20-5-10(b) of the Act, but, contrary to IDOT's position, those cases also do *not* say that, in order to satisfy Rule 307(a)(7), the appeals must involve all three or that the trial court must make findings as to all three elements. See, *e.g.*, *Illinois State Toll Highway Authority v. South Barrington Office Center*, 2016 IL App (1st) 150960, ¶¶

29-30; *Department of Transportation v. Sunnyside Partnership, L.P.*, 337 Ill. App. 3d 322 (2003).

Accordingly, in sum, we again reject IDOT's arguments and find our jurisdiction proper.

¶ 43                    B. Court Properly Denied Defendant's Motion

¶ 44    Defendant argues on appeal that the court erred in denying its traverse challenging IDOT's alleged good-faith negotiations.  Specifically, it argues that IDOT's inconsistent messaging and communications must have consequences to protect against abuse.  It contends that, by serving the complaint, IDOT made clear it was taking the property, but then invited a more reasonable counteroffer to avoid costly litigation.  Defendant argues that, while IDOT did not need to accept the counteroffer, its direction to defendant to "incur more costs to negotiate against itself in a lawsuit that it is forced to defend with the suggestion it 'avoid costly litigation,' when the lawsuit has already been initiated, is outrageous treatment of a private property owner."  Defendant argues that this approach gave IDOT a negotiating advantage, noting that the power of eminent domain may not be used as a "tactical sham."  In sum, defendant emphasizes that IDOT must act in good faith, "does not get to validate every action it takes because it has taken them," and its conduct should be prevented to ensure the fair and legitimate exercise of the power of eminent domain.

¶ 45    In general, the Act provides that private property shall not be taken or damaged for public use without just compensation. 735 ILCS 30/10-5-5 (West 2020). If a property owner does not consent to a taking or does not accept the offered amount of compensation, the Act delineates procedures the condemnor must follow, including, for example, the filing of a complaint for condemnation in the circuit court (*id.* § 10-5-10) and a letter to the property owner at least 60 days prior to filing the complaint, explaining (1) the amount of proposed compensation for the taking and the basis for computing it; (2) that the condemnor continues to seek a negotiated agreement

with the property owner; and (3) that, in the absence of a negotiated agreement, it intends to initiate a court proceeding under the Act (*id.* § 10-5-15(d)).

¶ 46    Furthermore, "[w]hen a condemnation action is filed, a landowner may challenge it by filing a traverse and motion to dismiss." *City of Chicago v. Midland Smelting Co.*, 385 Ill. App. 3d 945, 965 (2008).  A traverse and motion to dismiss challenges a plaintiff's right to condemn a defendant's property.  *Lake County Forest Preserve District v. First National Bank of Waukegan*, 154 Ill. App. 3d 45, 50-51 (1987).  By definition, a traverse is "a denial of a material allegation of fact."  *Forest Preserve District of Du Page County v. Miller*, 339 Ill. App. 3d 244, 250 (2003). An attempt to reach an agreement with a property owner regarding compensation is a condition precedent to the exercise of the power of eminent domain, and the attempt to agree must be made in good faith.  *South Barrington*, 2016 IL App (1st) 150960, ¶ 17.  When a party files a traverse to challenge a condemning entity's exercise of eminent domain authority, the condemning entity bears the burden of establishing a *prima facie* case on any disputed allegation.  *Enbridge Energy, Ltd. Partnership v. Fry*, 2017 IL App (3d) 150765, ¶ 47.   If that burden is satisfied, the property owner must refute the evidence presented by the condemning authority.  *Id.* ¶ 50.

¶ 47    As noted, the disputed allegation challenged by defendant's traverse here was the condition precedent that IDOT negotiate in good faith.  A good-faith finding is usually a factual one, rendering proper a manifest-weight-of-the-evidence standard of review.  See, *e.g.*, *151 Interstate Road Corp.*, 209 Ill. 2d at 488.  However, where no evidentiary hearing is held and the court ruled based solely on the documents submitted, *de novo* review is proper.  See *South Barrington*, 2016 IL App (1st) 150960, ¶¶ 32-34.  Under either standard, we affirm the trial court here.

¶ 48    It is undisputed that the Act "requires the condemnor to negotiate with the landowner in good faith over the amount of compensation to be paid before it initiates proceedings to take the

landowner's property through eminent domain." *151 Interstate Road Corp.*, 209 Ill. 2d at 480. A failure to do so requires dismissal of the condemnation action. *Endbridge Energy*, 2017 IL App (3d) 150765, ¶ 48. However, and notably, "[a]n offer made by a governmental body based on the advice of an experienced appraisal consultant is normally sufficient to establish a good-faith attempt to agree." *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 63.

¶ 49    Here, in response to defendant's traverse and motion to dismiss, IDOT presented Abplanalp's affidavit, wherein he attested not only that IDOT presented defendant with an offer based on a formal appraisal, but also that he pursued communications with defendant's counsel *numerous* times over a six-month period, inviting questions, explaining processes, and seeking updates on defendant's position on either accepting the offer or preparing a counteroffer. Abplanalp explained that, consistent with the Act's requirements, on April 5, 2022 (more than 30 days after the original offer letter and package was sent), IDOT sent defendant a 60-day letter, explaining that, if a settlement were not reached within 60 days, the property would be referred to the Attorney General's office for condemnation proceedings. However, the letter explained, Abplanalp remained available to assist defendant in reaching a negotiated settlement at any time prior to filing a condemnation suit. Although the 60 days expired in June 2022, communications continued, and one month later, on July 26, 2022, Abplanalp reminded defendant that the 60-day period had expired. Still, the complaint was not filed until August 30, 2022 (*i.e.*, more than four months after the 60-day letter was sent). And, even though Abplanalp's letter rejecting the counteroffer was dated September 8, 2022, he attested, "at IDOT's direction I continued to try to negotiate a settlement through September 28, 2022."

¶ 50    Defendant's allegations that IDOT did not negotiate in good faith omit virtually *all* communications between defendant and Abplanalp, focusing instead on the dates that: (1) IDOT sent the offer letter; (2) defendant submitted a counteroffer (almost five months later); (3) IDOT filed its complaint; and (4) IDOT rejected the counteroffer.  By focusing exclusively on those events, defendant ignores the context surrounding IDOT's actions, which reflects that, before filing a complaint, it was open to a timely response and/or counteroffer from defendant and waited well beyond the time required by the Act before filing the complaint.  We agree with the court that the evidence IDOT presented by virtue of Abplanalp's affidavit sufficed to establish a *prima facie* showing of good faith, yet defendant rebutted none of it.  Instead, defendant asserts that IDOT's filing of a complaint and rejection of the counteroffer, with an invitation to defendant to submit a more realistic one, does not seem fair and that, in general, the power of eminent domain should not be abused.  Yet, defendant presents no caselaw or evidence reflecting that IDOT violated the Act or suggesting that its actions can, in fact, be considered bad faith.  Indeed, our research reflects that courts have found good-faith negotiations lacking when, for example, a condemnor presented an offer significantly below market value, withheld the appraisal reports underlying the offer, or provided a very narrow window to respond (10 days) and did not follow up with the property owner.  See *e.g.*, *City of Chicago v. Zappani*, 376 Ill. App. 3d 927, 933 (2007); *Department of Transportation v. Hunziker*, 342 Ill. App. 3d 588, 596-97 (2003); *City of Naperville v. Old Second National Bank of Aurora*, 327 Ill. App. 3d 734, 741 (2002).  No evidence of similar conduct has been presented here.

¶ 51    Defendant claims that it does not take issue with the length of time IDOT waited before filing the complaint, but, instead, it disputes IDOT's decision to file a complaint and then invite a new counteroffer.  However, in our view, when we are being asked to consider whether, overall,

IDOT negotiated in good faith, the two are related. We cannot consider only the timing of the complaint and rejection of the counteroffer, to the exclusion of the entirety of IDOT's actions. In that vein, we agree with the trial court's assessment that IDOT's counteroffer-rejection letter did not, alone, prove that IDOT had not negotiated in good faith. Indeed, as IDOT notes, it complied with the Act's requirements concerning both the offer letter and the 60-day letter, and it also presented evidence reflecting *numerous* invitations to defendant for a response, counteroffer, or defendant's appraisal. Yet, it received no acceptance of the offer, nor counteroffer from defendant, for approximately five months, and, when it did present a counteroffer, it initially lacked support. Defendant presents no authority suggesting that good faith requires IDOT to negotiate and refrain from litigation indefinitely.

¶ 52    In sum, under either the manifest-weight or *de novo* standards of review, we reject defendant's arguments that IDOT failed to negotiate in good faith. We conclude that the trial court did not err in denying the traverse and motion to dismiss.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 55    Affirmed.